Roksana D. Moradi-Brovia (Bar No. 266572)
Matthew D. Resnik (Bar No. 182562)
**RESNIK HAYES MORADI LLP**
17609 Ventura Blvd., Suite 314
Encino, CA 91316
**Telephone:** (818) 285-0100
**Facsimile:** (818) 855-7013
roksana@RHMFirm.com
matthew@RHMFirm.com

*Attorneys for Debtor*
Monge Property Investments, Inc.

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>MONGE PROPERTY<br>INVESTMENTS, INC.,<br><br>Debtor and Debtor-in-Possession. | Case No.  2:12-bk-29275-ER<br><br>Chapter 11<br><br>**NOTICE OF MOTION AND MOTION FOR ORDER APPROVING SALE OF REAL PROPERTY PURSUANT TO 11 U.S.C. §363 FREE AND CLEAR OF ALL LIENS, CLAIMS AND INTERESTS, AND GRANTING CERTAIN OTHER RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF RUBEN MONGE, JR., VU LY AND GONZALO N. DIAZ IN SUPPORT THEREOF**<br><br>Date:  August 15, 2018<br>Time:  11:00 a.m.<br>Place: Courtroom 1568<br>         255 E. Temple Street<br>         Los Angeles, CA 90012 |

**TO THE HONORABLE ERNEST M. ROBLES, UNITED STATES BANKRUPTCY JUDGE; TO THE UNITED STATES TRUSTEE AND HIS COUNSEL OF RECORD; AND TO ALL INTERESTED PARTIES:**

PLEASE TAKE NOTICE that on August 15, 2018, at 11:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 1568 of the above-entitled United

1

**MOTION TO APPPOVE SALE OF REAL PROPERTY**

States Bankruptcy Court located at 255 E. Temple Street, Los Angeles, CA 90012,  Monge Property Investments, Inc., the Debtor in the above-referenced Chapter 11 case (hereinafter "the Debtor"), shall and hereby does, respectfully move this Court for the entry of an order authorizing and approving the sale of its real property located at 5908 ½ Fayette Street, Los Angeles, CA 90042 (hereinafter the "Property") to Journey Investments, Inc.  (the "Buyer"), a corporation that is unrelated to the Debtor, for the sum of $295,000, or to such other person or entity as may successfully overbid at the hearing, free and clear of all liens, claims and interests pursuant to 11 U.S.C. §363, and granting certain additional relief requested in the attached Memorandum of Points and Authorities.

The Motion is brought pursuant to 11 U.S.C. §§363 and 105; Federal Rules of Bankruptcy Procedure 2002 and 6004; Local Bankruptcy Rule 6004-1; the attached Memorandum of Points and Authorities; the Declarations submitted herewith; and such additional evidence and argument as may be presented at or before the hearing on this Motion.

PLEASE TAKE FURTHER NOTICE that any party opposing the relief sought by the Motion must file a written opposition setting forth the facts and law upon which the opposition is based and must appear at the hearing on the Motion. Any factual allegations set forth in such written response must be supported by competent and admissible evidence.

Any response or opposition to the Motion must be filed with the Court and served on Debtor's counsel, the Office of the U.S. Trustee, and all parties in interest, **at least fourteen (14) days prior to the scheduled hearing date on the Motion** (not excluding Saturdays, Sundays or legal holidays).

Any response not timely filed and served may be deemed by the Court to be consent to the granting of the relief requested by the Motion.

WHEREFORE, Debtor respectfully requests that the Court enter an order:

(1)    Finding that Notice of the Motion was adequate and appropriate under the circumstances;

**RESNIK HAYES
MORADI LLP**

2

**MOTION TO APPPOVE SALE OF REAL PROPERTY**

(2) Granting the Motion in its entirety;

(3) Authorizing and approving the sale of the Property to the Buyer or to another successful bidder, free and clear of all liens, claims, and interests;

(4) Approving the bidding procedures described in the Memorandum of Points and Authorities;

(5) Finding that the successful bidder is a good faith purchaser for the purposes of 11 U.S.C. §363(m);

(6) Authorizing the Debtor to take all necessary and reasonable steps to consummate the sale of the Property;

(7) Authorizing the payment of the commissions described in the Memorandum of Points and Authorities at the close of escrow subject to Debtor's objections;

(8) Authorizing payments of liens, claims and interests on and against the Property (collectively referred to herein as the "Liens, Claims and Interests"), *if any,* at the close of escrow;

(9) Authorizing the payment of real property taxes, plus interest, owed on the Property and all usual and customary escrow and closing and recording costs generally attributable to a seller of real property, *if any,* at the close of escrow;

(10) Transferring and attaching the liens, claims, and interests or portions of liens, claims and interests still unpaid at the close of escrow (collectively referred to as the "Remaining Liens, Claims, and Interests"), *if any*, from the Property to the net proceeds of the sale of the Property with the same force, effect, validity and priority that any and all such Liens, Claims and Interests had with respect to the Property;

(11) Authorizing the Debtor to hold that portion of the sale proceeds attributable to disputed claims of exemption, liens and encumbrances, *if any*, pending further orders of this Court;

RESNIK HAYES
MORADI LLP

3

**MOTION TO APPPOVE SALE OF REAL PROPERTY**

(12)    Compelling all holders of the liens and encumbrances to execute any and all documentation that may be required to allow escrow to close;

(13)    Waiving the fourteen-day (14) waiting period set forth in Bankruptcy Rule 6004(h); and

(14)    Granting such other and further relief as the Court deems just and proper under the circumstances.

Dated:  July 18, 2018                              **RESNIK HAYES MORADI LLP**

                                          **By:**      /s/ Roksana D. Moradi-Brovia
                                                    **Matthew D. Resnik**
                                                    **Roksana D. Moradi-Brovia**
                                                    *Attorneys for Debtor*
                                                    Monge Property Investments, Inc.

4

**MOTION TO APPPOVE SALE OF REAL PROPERTY**

# TABLE OF CONTENTS

**MEMORANDUM OF POINTS AND AUTHORITIES** ..................................................... 6

**I.   STATEMENT OF FACTS** ............................................................................. 6

   *A.    Introduction.* ................................................................................................. 6

   *B.    Real Property at Issue and Brief Summary of the Terms of the Sale.* ...................... 6

   *C.    Marketing Efforts* ....................................................................................... 7

   *D.    Payment of Liens, Encumbrances and Other Expenses.* ........................................ 9

   *E.    Sale of the Property is in the Best Interest of the Estate.* ...................................... 9

**II.   DISCUSSION** .............................................................................................. 10

   *A.    Debtor Has Complied with All Notice Requirements Under the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rules Governing the Sale of the Property.* ................................................................................................. 10

   *B.    This Motion Should be Approved Because Good Business Reasons Exist to Approve the Sale of the Property, the Purchase Price for the Property is Fair and Reasonable, and the Proposed Sale is in the Best Interests of the Estate and Creditors.* ......................................................................................................... 12

     1.   Sound Business Purpose. ....................................................................... 12

     2.   Fair and Reasonable Price. .................................................................... 13

     3.   Adequate Marketing. ............................................................................. 13

     4.   Good Faith. .......................................................................................... 14

     5.   Accurate and Reasonable Notice. ............................................................ 14

   *C.    The Sale of the Property Should Be Free and Clear of All Liens, Claims, and Interests Under 11 U.S.C. § 363(f).* ....................................................................... 15

   *D.    Debtor Requests that the Court Waive the 14-Day Waiting Period in Bankruptcy Rule 6004(h).* ...................................................................................................... 16

**III.   CONCLUSION** .......................................................................................... 16

**DECLARATION OF RUBEN MONGE, JR.** .......................................................... 19

**DECLARATION OF GONZALO N. DIAZ** ............................................................. 26

**PROOF OF SERVICE OF DOCUMENT** .................................................................. 28

**MOTION TO APPPOVE SALE OF REAL PROPERTY**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    STATEMENT OF FACTS

*A.  Introduction.*

Monge Property Investments, Inc. Debtor and Debtor-in-Possession herein (hereinafter the "Debtor"), commenced its bankruptcy case by filing a voluntary petition under Chapter 11 on May 31, 2012.

Debtor is a California corporation and which owns and operates three (3) parcels of residential real property:

1.  5908 1/2 Fayette St., Los Angeles, CA 90042;

2.  5908 Fayette St., Los Angeles, CA 90042; and

3.  942-44 Marine Ave., Wilmington, CA 90744.

Its sole shareholder and President is Ruben Monge, Jr.

Debtor is operating its business and managing its financial affairs as a Debtor-in-Possession ("DIP") pursuant to §§1107 and 1108 of the Bankruptcy Code.

The hearing on the adequacy of the information contained in Debtor's Second Amended Disclosure Statement Describing Second Amended Chapter 11 Plan of Reorganization (the "Disclosure Statement") [Docket No. 681] will take place at 11:00 a.m. on August 14, 2018.


*B.  Real Property at Issue and Brief Summary of the Terms of the Sale.*

Through this Motion, Debtor seeks to sell one of its real properties, a single family residence, located at 5908 ½ Fayette Street, Los Angeles, CA 90042 (the "Property").

As set forth in its Disclosure Statement, the Debtor seeks to fund its Second Amended Chapter 11 Plan of Reorganization (the "Plan") [Docket No. 682], at least in part, through the sale of the Property.

The Property was initially listed for sale at $305,906. After several counteroffers and negotiations between the parties, the Debtor accepted the offer of Journey Investments, Inc. (the "Buyer"), a corporation that is entirely unrelated to the Debtor, to purchase the

Property for $295,000.  The complete Residential Purchase Agreement is attached hereto as **Exhibit "A."**

By way of summary, the principal terms of agreement are as follows:

(1) Purchase price is $295,000;

(2) Buyer will deposit $10,000 into escrow;

(3) This is an all-cash offer; i.e., the Buyer is not financing the purchase of the Property;

(4) Escrow is to close within ten (10) of days of this Court approval of the sale, (the "Proposed Closing Date").

*C.  Marketing Efforts*

On July 9, 2014, Debtor filed its Application to Employ Vu Ly and REMAX 6000 Realty as Real Estate Broker for the Estate (Docket No. 308); the application was approved by entry of order thereon on August 22, 2014 (Docket No. 323).

Mr. Ly is a real estate agent with REMAX 6000 Realty located in Arcadia. Since 2009, he has represented dozens of clients in the purchase and sale of real properties. *Mr. Ly and REMAX 6000 Realty are hereinafter referred to as "Broker."* The complete Listing Agreement between Debtor and Broker is attached hereto as **Exhibit "B."**

As set forth in the Listing Agreement, Broker will be compensated 4.5% of the purchase price of the Property or will share in the commission with a prospective buyer's agent/broker (2.25% each).

Debtor listed the Property for sale with Broker at $305,906 on May 3, 2018 and since that time the Property has been listed on the Multiple Listing Service ("MLS") as well as advertised locally and nationally.

As set forth in his attached declaration, Broker held "open houses" and networked with other agents and brokers who know/have buyers for properties of this type – meeting with these agents and brokers at the property as quickly as the parties were able to determine a mutually acceptable date/time.

**RESNIK HAYES
MORADI LLP**

7

**MOTION TO APPPOVE SALE OF REAL PROPERTY**

Broker received three (3) written offers, all below asking price.  The Buyer came in with the highest and best counter at $295,000.

The Broker initially met the Buyer's president, Gonzalo N. Diaz, at one of the open houses that Broker held at the property.  At that time, the Buyer was not represented by an agent or broker and therefore Broker initiated a dual agency contract with both the Debtor and Buyer.

*The Debtor, Broker and Buyer have no prior connection or relation, except as set forth herein.*

Broker thereafter conducted negotiations with additional interested parties and had conversations with other agents and/or developers, who ultimately determined not to submit written offers or who wanted to submit offers below $295,000.

Based on the forgoing, Debtor and Broker believe that Buyer's offer is the best offer that will be received for the purchase of this property and Debtor has therefore chosen to accept it.

Broker has shown the Notice of Motion to the Buyer and has discussed with the Buyer the Bankruptcy procedures required for the sale of the Property.

Debtor understands that each party that has expressed an interest in the Property should be served with Notice of and a copy of this Motion *and those parties are listed on the attached Proof of Service.*

Additionally, Broker will post information about this Motion on the MLS and various websites to notify any potential overbidder's of the hearing date and the Bankruptcy procedures required for the sale of the Property.

///

///

///

///

///

///

8

**MOTION TO APPPOVE SALE OF REAL PROPERTY**

*D. Payment of Liens, Encumbrances and Other Expenses.*

The proposed sale will produce funds to pay the following:

| **Purchase Price** | **$295,000** |
|---|---|
| Broker commission (4.5%) | $13,275 |
| Other estimated closing costs (including but not limited to escrow and title charges, government recording and transfer charges, etc.) [approx. 2%] | $5,900 |
| Los Angeles County Treasurer and Tax Collector (approximately and per POC No. 7-4, plus redemption penalty/interest; plus any fees, costs, or charges that LACTTC is entitled to) | $35,106 |
| U.S. Trustee fees | $650 |
| **Remaining Proceeds of Sale** | **$240,069** |

*E. Sale of the Property is in the Best Interest of the Estate.*

Debtor respectfully submits that the proposed sale is in the best interest of the estate and all creditors as the sale will generate a significant profit for the estate, as shown in the chart above (Section D).  Debtor will deposit the net proceeds of the sale into its Debtor-in-Possession general bank account for the benefit of the estate and all creditors. The projected sale of the Property will result in a large influx of funds that will enable the Debtor to confirm its Plan and pay its creditors.

*F. Recommended Overbidding Procedures.*

Debtor proposes the following overbidding procedures:

(1) The initial overbid must be at least $15,000 more than the initial bid of $295,000.  The overbid must be on substantially the same terms as set forth in the complete Residential Purchase Agreement attached hereto as **Exhibit "A."**

RESNIK HAYES
MORADI LLP

9

**MOTION TO APPPOVE SALE OF REAL PROPERTY**

(2) Overbid increments will be $7,500 after the initial overbid.

(3) Any successful overbidder must be able to close by the Proposed Closing Date.

(4) Any party wishing to overbid on the Property during the hearing on the Motion must contact Debtor's counsel at least seventy-two (72) hours prior to the hearing <u>and</u> provide evidence of available financial resources such as funds and/or proof of ability to finance up to the overbidder's maximum bid to the Debtor's reasonable satisfaction.

(5) Any overbidder wishing to overbid on the Property during the hearing must also submit, before the time of the hearing, a deposit for the purchase of the Property, by cashier's check or other cash equivalent in the amount of at least $10,000 made payable to "RESNIK HAYES MORADI LLP CLIENT TRUST ACCOUNT."  The successful overbidder's deposit will be applied towards the purchase of the Property, and will not be refunded in the event the overbidder cannot successfully close escrow pursuant to the terms of the sale as proscribed herein.

(6) If an agent/broker brings a prospective bidder who is ultimately the successful bidder and to whom the sale is approved, that agent/broker will share in the commission with Broker; the total commission shall not exceed 4.5% (2.25% even split between them), on the terms set forth in the Listing Agreement attached hereto as **Exhibit "B."**

## II.    DISCUSSION

*A. Debtor Has Complied with All Notice Requirements Under the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rules Governing the Sale of the Property.*

Section 363(b)(1) provides that a debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C.

§363(b)(1).  Section 102(1) defines "after notice and a hearing" as "after such notice as is appropriate in the particular circumstances." 11 U.S.C. § 102(1).

Rule 6004(a) of the Federal Rules of Bankruptcy Procedure states that notice of a proposed sale of property, other than cash collateral, not in the ordinary course of business shall be given pursuant to Rule 2002(a)(2), (c)(1), (i), and (k) and, if applicable, in accordance with §363(b)(2) of the Code. Fed. R. Bankr. Proc. 6004(a).

Rule 2002(a)(2) of the Federal Rules of Bankruptcy Procedure requires at least twenty-one (21) days' notice of a proposed sale of property of the estate other than in the ordinary course of business, unless the Court for cause shown shortened the time or directs another method of giving notice.  Fed. R. Bankr. Proc. 2002(a)(2).

Rule 2002(c)(1) requires that the notice of a proposed sale include the date, time and place of any public sales, the terms and conditions of any private sale, and the time fixed for filing objections. Fed R. Bankr. Proc. 2002(c)(1).  It also provides that the notice of sale or property is sufficient if it generally describes the property. *Id.*

Local Bankruptcy Rule 6004-1(c) states that unless otherwise ordered by the court and subject to Fed. R. Bankr. Proc. 6003(b), an order authorizing the sale of estate property other than in the ordinary course of business may be obtained upon motion by the debtor-in-possession after notice and a hearing pursuant to LBR 9013-1(d).

As set forth herein and in the Notice of this Motion, Debtor has complied with all of the above provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules.  Further, Debtor will serve all creditors of the estate, the United States Trustee, and all parties requesting special notice, with the Notice of Motion and this Motion.

///

///

///

///

///

**RESNIK HAYES
MORADI LLP**

11

**MOTION TO APPPOVE SALE OF REAL PROPERTY**

*B.  This Motion Should be Approved Because Good Business Reasons Exist to Approve the Sale of the Property, the Purchase Price for the Property is Fair and Reasonable, and the Proposed Sale is in the Best Interests of the Estate and Creditors.*

As a general matter, a court considering a motion to approve a sale under §363(b) should determine from the evidence presented before it that a "good business reason" exists to grant such a motion. *In re Lionel Corp.,* 722 F.2d 1063, 1071 (2d. Cir. 1983).

In addition, the Court must further find it is in the best interest of the estate. To make this determination, a Court should consider whether:

(1) the sale is fair and reasonable (*i.e.,* the price to be paid is adequate);

(2) the property has been given adequate marketing;

(3) the sale is in good faith (*i.e.,* there is an absence of any lucrative deals with insiders); and

(4) adequate notice has been provided to creditors.

*In re Wilde Horse Enterprises, Inc.,* 136 B.R. 830, 841-2 (Bankr. C.D. Cal. 1991); *In re Mama's Original Foods, Inc.,* 234 B.R. 500, 502-505 (C.D. Cal. 1999).

Debtor submits that the proposed sale of the Property to Buyer satisfies each of these requirements.

1.  <u>Sound Business Purpose.</u>

The Ninth Circuit Bankruptcy Appellate Panel in *Walter v. Sunwest Bank (In re Walter),* 83 B.R. 14, 19-20 (9th Cir. B.A.P. 1988) adopted a flexible case-by-case test to determine whether the business purpose for a proposed sale justifies disposition of property of the estate under §363(b).

The facts pertaining to the sale at issue here amply substantiate Debtor's business decision that the contemplated sale of the Property to the Buyer, or a successful overbidder, serves the best interests of the estate's creditors and merits the Court's approval:  (a) the Property has been actively marketed by the Broker; (b) the proposed sale,

or any overbid, of the Property will result in the Debtor obtaining the highest and best price for the Property and significant net proceeds to the estate; (c) the projected sale of the Property will result in a significant profit for the estate, funds that will enable the Debtor to confirm its Plan and pay its creditors.

Debtor therefore believes that the proposed sale of the Property is in the best interest of the estate and *all* creditors.

## 2. Fair and Reasonable Price.

In order for a sale to be approved under §363(b), the purchase price must be fair and reasonable. *See generally, In re Canyon Partnership*, 55 B.R. 520 (Bankr. S.D. Cal. 1985). The trustee is given substantial discretion in this regard. *Id.* In addition, Courts have broad discretion with respect to matters under §363(b). *See Big Shanty Land Corp. v. Comer Properties, Inc.*, 61 B.R. 272, 278 (Bankr. N.D. Ga. 1985). In any sale of estate assets, the ultimate purpose is to obtain the highest price for the property sold. *In re Wilde Horse Enterprises, Inc.*, 136 B.R. at 841 (*citing Matter of Chung King, Inc.,* 753 F.2d 547 (7th Cir. 1985), *In re Alpha Industries, Inc.*, 84 B.R. 703, 705 (Bankr. Mont. 1988)).

As discussed above, the Property has been actively marketed by the Broker. The Buyer is a serious buyer and has made a sound offer. Thus, based on the response to the foregoing efforts and the Debtor's and Broker's familiarity with current market conditions, Debtor believe that the price offered for the Property by the Buyer, or any overbidder, represents the fair market value of the Property.

As a result, the Debtor submit that the final purchase price to be paid by the Buyer or an overbidder, represents a fair and reasonable price for the Property.

## 3. Adequate Marketing.

The efforts of the Broker to market the Property have been extensive. The Property has been listed on the Multiple Listing Service ("MLS") as well as advertised locally and

nationally. Broker has networked with other agents and brokers who know/have buyers for properties of this type.

Debtor has evaluated the current Buyer's offer in particular, and believes that the price is reasonable given market values.

Based on the foregoing, the Debtor submits that the Property has been more than adequately marketed.

4.   Good Faith.

When a Bankruptcy Court authorizes a sale of assets pursuant to § 363(b)(1), it is required to make a finding with respect to the "good faith" of the purchaser. *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 149 (3d Cir. 1986). With respect to conduct in conjunction with the sale of the property, the good faith requirement focuses principally on whether there is any evidence of "fraud, collusion between the purchase and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *Id.* at 147; *In re Wilde Horse Enterprises,* 136 B.R. at 842.

Debtor herein negotiated the agreement with the Buyer at arm's length and the Buyer is not an "insider" of the Debtor as that term is defined in the Bankruptcy Code. 11 U.S.C. § 101(31).

There has been no fraud or collusion in connection with the proposed sale because everyone who expressed an interest in the Property was able to make an offer on the Property, and which offer was thoroughly considered by the Debtor.

Based on the foregoing, the Debtor submits that the Buyer is a "good faith" purchaser.

5.   Accurate and Reasonable Notice.

As set forth above, Debtor will serve all creditors of the estate, the United States Trustee, and all parties requesting special notice, with the Notice of Motion and this Motion.  The Notice of Motion includes the date, time and place of the sale and the time

fixed for filing objections thereto. The Broker has provided a copy of the Notice of Motion and Motion to the Buyer.

Further, Debtor will file Form 6004-2 with the Clerk of the Bankruptcy Court, as required by Local Bankruptcy Rule 6004-1(f), so that the Clerk of the Bankruptcy Court can publish information regarding the proposed sale.

Debtor therefore submits that the notice of the proposed sale should be deemed adequate, accurate and reasonable by the Court.

C. *The Sale of the Property Should Be Free and Clear of All Liens, Claims, and Interests Under 11 U.S.C. § 363(f).*

Bankruptcy Code § 363(f) provides that a trustee may sell property of the estate "free and clear of any interest in such property" if:

(1) applicable non-bankruptcy law permits the sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

Because § 363(f) is in the disjunctive, the Trustee must only meet one of the five (5) subsections of § 363(f) in order to sell the Property free and clear of all liens, claims, and interests. *In re Whittemore,* 37 B.R. 93, 94 (Bankr. D. Or. 1984).

The proposed sale will pay the Los Angeles County Treasurer and Tax Collector in full and Debtor does not believe that there exist any other liens against the Property. *No entity or party interest has filed a Proof of Claim asserting a claim against the Property.*

D. *Debtor Requests that the Court Waive the 14-Day Waiting Period in Bankruptcy Rule 6004(h).*

Bankruptcy Rule 6004(h) provides, among other things, that an order authorizing the sale of property is stayed until the expiration of fourteen (14) days after entry of the order, unless the Court orders otherwise.

Here, all parties with a lien, claim or interest in the Property, and all creditors of the estate, have been/will be served with notice of the proposed sale and an opportunity to object and the ***fourteen-day (14) waiting period could only operate to delay the closing of escrow.***

As a result, under these circumstances, the Court should waive the fourteen-day (14) stay of Bankruptcy Rule 6004(h) to permit the Debtor to proceed with the close of escrow on the sale as soon as possible.

## III.    <u>CONCLUSION</u>

WHEREFORE, the Debtor respectfully requests that the Court enter an order:

(1)    Finding that Notice of the Motion was adequate and appropriate under the circumstances;

(2)    Granting the Motion in its entirety;

(3)    Authorizing and approving the sale of the Property to the Buyer or to another successful bidder, free and clear of all liens, claims, and interests;

(4)    Approving the bidding procedures described in the Memorandum of Points and Authorities;

(5)    Finding that the successful bidder is a good faith purchaser for the purposes of 11 U.S.C. §363(m);

(6)    Authorizing the Debtor to take all necessary and reasonable steps to consummate the sale of the Property;

RESNIK HAYES
MORADI LLP

16

**MOTION TO APPPOVE SALE OF REAL PROPERTY**

(7)  Authorizing the payment of the commissions described in the Memorandum of Points and Authorities at the close of escrow subject to Debtor's objections;

(8)  Authorizing payments of liens, claims and interests on and against the Property (collectively referred to herein as the "Liens, Claims and Interests"), *if any,* at the close of escrow;

(9)  Authorizing the payment of real property taxes, plus interest, owed on the Property and all usual and customary escrow and closing and recording costs generally attributable to a seller of real property, *if any,* at the close of escrow;

(10)  Transferring and attaching the liens, claims, and interests or portions of liens, claims and interests still unpaid at the close of escrow (collectively referred to as the "Remaining Liens, Claims, and Interests"), *if any*, from the Property to the net proceeds of the sale of the Property with the same force, effect, validity and priority that any and all such Liens, Claims and Interests had with respect to the Property;

(11)  Authorizing the Debtor to hold that portion of the sale proceeds attributable to disputed claims of exemption, liens and encumbrances, *if any*, pending further orders of this Court;

(12)  Compelling all holders of the liens and encumbrances to execute any and all documentation that may be required to allow escrow to close;

(13)  Waiving the fourteen-day (14) waiting period set forth in Bankruptcy Rule 6004(h); and

///
///
///
///
///

(14)    Granting such other and further relief as the Court deems just and proper

under the circumstances.

Dated:  July 18, 2018                                    **RESNIK HAYES MORADI LLP**

                                        **By:**      /s/ Roksana D. Moradi-Brovia
                                                  **Matthew D. Resnik**
                                                  **Roksana D. Moradi-Brovia**
                                                  *Attorneys for Debtor*
                                        Monge Property Investments, Inc.

**MOTION TO APPPOVE SALE OF REAL PROPERTY**

## DECLARATION OF RUBEN MONGE, JR.

I, RUBEN MONGE JR., declare as follows:

1.      I am the sole shareholder and President of MONGE PROPERTY INVESTMENTS, INC., the Debtor in this case ("Debtor"). I am over the age of eighteen (18). I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would testify competently with respect thereto. Where facts are alleged upon information and belief, I believe them to be true.

2.      The Debtor commenced its bankruptcy case by filing a voluntary petition under Chapter 11 on May 31, 2012.

3.      Debtor is a California corporation and which owns and operates three (3) parcels of residential real property:

     A.  5908 1/2 Fayette St., Los Angeles, CA 90042;

     B.  5908 Fayette St., Los Angeles, CA 90042; and

     C.  942-44 Marine Ave., Wilmington, CA 90744.

4.      The hearing on the adequacy of the information contained in Debtor's Second Amended Disclosure Statement Describing Second Amended Chapter 11 Plan of Reorganization (the "Disclosure Statement") [Docket No. 681] will take place at 11:00 a.m. on August 14, 2018.

5.      Through this Motion, Debtor seeks to sell one of its real properties, a single family residence, located at 5908 ½ Fayette Street, Los Angeles, CA 90042 (the "Property").

6.      As set forth in its Disclosure Statement, the Debtor seeks to fund its Second Amended Chapter 11 Plan of Reorganization (the "Plan") [Docket No. 682], at least in part, through the sale of the Property.

7.      After several counteroffers and negotiations between the parties, the Debtor accepted the offer of Journey Investments, Inc. (the "Buyer"), a corporation that is entirely

unrelated to the Debtor, to purchase the Property for $295,000. The complete Residential Purchase Agreement is attached hereto as **Exhibit "A."**

8.    The principal terms of agreement are as follows:

A. Purchase price is $295,000;

B. Buyer will initially deposit $10,000 into escrow;

C. This is an all-cash offer; i.e., the Buyer is not financing the purchase of the Property;

D. Escrow is to close within ten (10) of days of this Court approval of the sale, (the "Proposed Closing Date").

9.    On July 9, 2014, Debtor filed its Application to Employ Vu Ly and REMAX 6000 Realty as Real Estate Broker for the Estate (Docket No. 308); the application was approved by entry of order thereon on August 22, 2014 (Docket No. 323). *Mr. Ly and REMAX 6000 Realty are hereinafter referred to as "Broker."* The complete Listing Agreement between Debtor and Broker is attached hereto as **Exhibit "B."**

10.    As set forth in the Listing Agreement, Broker will be compensated 4.5% of the purchase price of the Property or will share in the commission with a prospective buyer's agent/broker (2.25% each).

11.    Debtor listed the Property for sale with Broker at $305,906 on May 3, 2018 and since that time the Property has been listed on the Multiple Listing Service ("MLS"); advertised locally and nationally; and "open houses" were held.

12.    Debtor received three (3) written offers, all below asking price.  The Buyer came in with the highest and best counter at $295,000.

13.    The Broker initially met the Buyer's president, Gonzalo N. Diaz, at one of the open houses that Broker held at the property.  At that time, the Buyer was not represented by an agent or broker and therefore Broker initiated a dual agency contract with both the Debtor and Buyer.

14.    Broker thereafter conducted negotiations on behalf of the Debtor with additional interested parties and had conversations with other agents and/or developers,

who ultimately determined not to submit written offers or who wanted to submit offers below $295,000.

15.     Based on the forgoing, I believe that Buyer's offer is the best offer that will be received for the purchase of this property and Debtor has therefore chosen to accept it.

16.     Debtor negotiated the agreement with the Buyer at arm's length. I have no prior connection or relation with the Buyer, except as set forth herein.  The Debtor and Buyer have no prior connection or relation, except as set forth herein.

17.     I understand that each party that has expressed an interest in the Property should be served with Notice of and a copy of this Motion and those parties are listed on the attached Proof of Service.

18.     Additionally, I have asked Broker to post information about this Motion on the MLS and various websites to notify any potential overbidder's of the hearing date and the Bankruptcy procedures required for the sale of the Property.

19.     The proposed sale will produce funds to pay the following:

| Purchase Price | $295,000 |
| --- | --- |
| Broker commission (4.5%) | $13,275 |
| Other estimated closing costs (including but not limited to escrow and title charges, government recording and transfer charges, etc.) [approx. 2%] | $5,900 |
| Los Angeles County Treasurer and Tax Collector (approximately and per POC No. 7-4, plus redemption penalty/interest; plus any fees, costs, or charges that LACTTC is entitled to) | $35,106 |
| U.S. Trustee fees | $650 |
| **Remaining Proceeds of Sale** | **$240,069** |

20.    I believe that the proposed sale is in the best interest of the estate and all creditors as the sale will generate a <u>significant</u> profit for the estate, as shown in the chart above.  Debtor will deposit the net proceeds of the sale into its Debtor-in-Possession general bank account for the benefit of the estate and all creditors. The projected sale of the Property will result in a large influx of funds that will enable the Debtor to confirm its Plan and pay its creditors.

21.    The Property has been actively marketed by the Broker.  The Buyer is a serious buyer and has made a sound offer.  Thus, based on the response to the foregoing efforts I believe that the price offered for the Property by the Buyer, or any overbidder, represents the fair market value of the Property.

I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct.

Executed on July 18, 2018 at _____, California.

SEE NEXT PAGE

_____
Ruben Monge, Jr.
***Declarant***

RESNIK HAYES
MORADI LLP

22
**MOTION TO APPPOVE SALE OF REAL PROPERTY**

20.     I believe that the proposed sale is in the best interest of the estate and all creditors as the sale will generate a significant profit for the estate, as shown in the chart above.  Debtor will deposit the net proceeds of the sale into its Debtor-in-Possession general bank account for the benefit of the estate and all creditors. The projected sale of the Property will result in a large influx of funds that will enable the Debtor to confirm its Plan and pay its creditors.

21.     The Property has been actively marketed by the Broker.  The Buyer is a serious buyer and has made a sound offer.  Thus, based on the response to the foregoing efforts I believe that the price offered for the Property by the Buyer, or any overbidder, represents the fair market value of the Property.

I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct.

Executed on July 9, 2018 at _Monterey Park_, California.

_____
Ruben Monge, Jr.
***Declarant***

# DECLARATION OF VU LY

I, VU LY, declare and state as follows:

1.     I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would testify competently with respect thereto.  Where facts are alleged upon information and belief, I believe them to be true.

2.     I am a licensed real estate agent (CalBRE #0186736) and in good standing in the State of California.

3.     I am a real estate agent with REMAX 6000 Realty Arcadia. My offices are located at 159 E. Live Oak Ave., #106, Arcadia, CA 91006.

4.     I have represented dozens of clients in the purchase and sale of real properties. I am qualified to make this declaration based upon my extensive knowledge of real estate.

5.     I have been employed by Monge Property Investments, Inc. (the "Debtor') as its real estate agent for the sale of its single-family residence located at 5908 ½ Fayette Street, Los Angeles, CA 90042 (the "Property").  A true and correct copy of the Listing Agreement is attached hereto as **Exhibit "B."** The Property was initially listed for sale at $305,906.

6.     As set forth in the Listing Agreement, I will be compensated 4.5% of the purchase price of the Property or will share in the commission with a prospective buyer's agent/broker (2.25% each).

7.     The Property was listed for sale at $305,906 on May 3, 2018 and since that time the Property has been listed on the Multiple Listing Service ("MLS") as well as advertised locally and nationally.

8.     I held "open houses" and networked with other agents and brokers who know/have buyers for properties of this type – meeting with these agents and brokers at the property as quickly as the parties were able to determine a mutually acceptable date/time.

9.      I received three (3) written offers, all below asking price.

10.      After several counteroffers and negotiations between the parties, the Debtor accepted the offer of Journey Investments, Inc. (the "Buyer") to purchase the Property for $295,000. The complete Residential Purchase Agreement is attached hereto as **Exhibit "A."**

11.      I initially met the Buyer's president, Gonzalo N. Diaz, at one of the open houses that I held at the property.  At that time, the Buyer was not represented by an agent or broker and therefore I initiated a dual agency contract with both the Debtor and Buyer. The Buyer and I have no prior connection or relation, except as set forth herein.

12.      I thereafter conducted negotiations with additional interested parties and had conversations with other agents and/or developers, who ultimately determined not to submit written offers or who wanted to submit offers below $295,000.

13.      The Buyer came in with the highest and best counter at $295,000.

14.      Based on the forgoing, I believe that Buyer's offer is the best offer that will be received for the purchase of the Property.

15.      I have shown the Notice of Motion to the Buyer and have discussed with the Buyer the Bankruptcy procedures required for the sale of the Property.

16.      I understand that each party that has expressed an interest in the Property should be served with Notice of and a copy of this Motion *and those parties are listed on the attached Proof of Service.*

///
//
///
///
///
///
///
///

24
**MOTION TO APPPOVE SALE OF REAL PROPERTY**

17.   Additionally, I will post information about this Motion on the MLS and various websites to notify any potential overbidder's of the hearing date and the Bankruptcy procedures required for the sale of the Property.

I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct.

Executed on Wednesday, July 18, 2018, at _____, California.

SEE NEXT PAGE

_____
**Vu Ly**
*Declarant*

**RESNIK HAYES
MORADI LLP**

25
**MOTION TO APPPOVE SALE OF REAL PROPERTY**

17.     Additionally, I will post information about this Motion on the MLS and various websites to notify any potential overbidder's of the hearing date and the Bankruptcy procedures required for the sale of the Property.

I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct.

Executed on Monday, July 09, 2018, at ___Arcadia___, California.

Vu Ly
*Declarant*

25
**MOTION TO APPPOVE SALE OF REAL PROPERTY**

## DECLARATION OF GONZALO N. DIAZ

I, Gonzalo N. Diaz, declare and state as follows:

1.      I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would testify competently with respect thereto.  Where facts are alleged upon information and belief, I believe them to be true.

2.      I am the President of Journey Investments, Inc.

3.      After several counteroffers and negotiations between the parties, Monge Property Investments, Inc. (the "Debtor') accepted Journey Investments, Inc.'s (the "Buyer") offer to purchase its single-family residence located at 5908 ½ Fayette Street, Los Angeles, CA 90042 (the "Property") for $295,000. The complete Residential Purchase Agreement is attached hereto as **Exhibit "A."**

4.      The Buyer is a corporation that is entirely unrelated to the Debtor.

5.      I initially met the Debtor's agent/broker, Vu Ly and REMAX 6000 Realty (hereinafter "Broker"), at one of the open houses that he held at the Property on behalf of the Debtor.  At that time, the Buyer was not represented by an agent or broker and therefore the parties initiated a dual agency contract with the Buyer.

6.      The principal terms of agreement are as follows:

   a.  Purchase price is $295,000;

   b.  Buyer will initially deposit $10,000 into escrow;

   c.  This is an all-cash offer; i.e., the Buyer is not financing the purchase of the Property;

   d.  Escrow is to close within ten (10) of days of this Court approval of the sale, (the "Proposed Closing Date").

7.      The Buyer negotiated the agreement with the Debtor at arm's length. I have no prior relationship with the Debtor, its principal, its attorneys or Broker, except as set

RESNIK HAYES
MORADI LLP

26

**MOTION TO APPPOVE SALE OF REAL PROPERTY**

forth herein.  Buyer has no prior relationship with the Debtor, its principal, its attorneys or Broker, except as set forth herein.

8.      I have seen the Notice of Motion and have discussed with the Broker the Bankruptcy procedures required for the sale of the Property.  I understand that there may be overbidding or an auction at the hearing on this Motion.

I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct.

Executed on July 18, 2018 at _____, California.

SEE NEXT PAGE
_____
**Gonzalo N. Diaz**
*Declarant*

**MOTION TO APPPOVE SALE OF REAL PROPERTY**

forth herein.  Buyer has no prior relationship with the Debtor, its principal, its attorneys or Broker, except as set forth herein.

8.     I have seen the Notice of Motion and have discussed with the Broker the Bankruptcy procedures required for the sale of the Property.  I understand that there may be overbidding or an auction at the hearing on this Motion.

I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct.

Executed on July 9, 2018 at _____Fullerton_____, California.

Gonzalo N. Diaz
*Declarant*

27
**MOTION TO APPPOVE SALE OF REAL PROPERTY**

# EXHIBIT A



**CALIFORNIA
ASSOCIATION
OF REALTORS®**

# CALIFORNIA
# RESIDENTIAL PURCHASE AGREEMENT
# AND JOINT ESCROW INSTRUCTIONS
### (C.A.R. Form RPA-CA, Revised 12/15 )

**Date Prepared:** *05/28/2018*

**1. OFFER:**

  **A. THIS IS AN OFFER FROM** _____ *Journey Investments, LLC* _____ ("Buyer").

  **B. THE REAL PROPERTY** to be acquired is _____ *5908 1/2 Fayette St, Los Angeles, CA  90042-2625* _____ , situated in
  *Los Angeles* (City), *Los Angeles* (County), California, *90042-2625* (Zip Code), Assessor's Parcel No. *5484-008-029* ("Property").

  **C. THE PURCHASE PRICE** offered is *Two Hundred Ninety-Five Thousand*
  _____ Dollars $ *295,000.00* .

  **D. CLOSE OF ESCROW** shall occur on _____ (date)(or [X] *10* **Days** After Acceptance).

  **E.** Buyer and Seller are referred to herein as the "Parties." Brokers are not Parties to this Agreement.

**2. AGENCY:**

  **A. DISCLOSURE:** The Parties each acknowledge receipt of a [X] "Disclosure Regarding Real Estate Agency Relationships"
  (C.A.R. Form AD).

  **B. CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction:
  Listing Agent _____ *REMAX 6000 REALTY* _____ (Print Firm Name) is the agent of (check one):
  [X] the Seller exclusively; or ☐ both the Buyer and Seller.
  Selling Agent _____ *REMAX 6000 REALTY* _____ (Print Firm Name) (if not the same as the
  Listing Agent) is the agent of (check one): [X] the Buyer exclusively; or ☐ the Seller exclusively; or ☐ both the Buyer and Seller.

  **C. POTENTIALLY COMPETING BUYERS AND SELLERS:** The Parties each acknowledge receipt of a [X] "Possible
  Representation of More than One Buyer or Seller - Disclosure and Consent (C.A.R. Form PRBS).

**3. FINANCE TERMS:** Buyer represents that funds will be good when deposited with Escrow Holder.

  **A. INITIAL DEPOSIT:** Deposit shall be in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____ *10,000.00*
    **(1)** Buyer Direct Deposit: Buyer shall deliver deposit directly to Escrow Holder by electronic funds
    transfer, ☐ cashier's check, ☐ personal check, ☐ other _____ within 3 business days
    after Acceptance (or _____ );
    **OR (2)** ☐ Buyer Deposit with Agent: Buyer has given the deposit by personal check (or _____ )
    to the agent submitting the offer (or to _____ ), made payable to
    _____ . The deposit shall be held uncashed until Acceptance and then deposited
    with Escrow Holder within 3 business days after Acceptance (or _____ ).
    Deposit checks given to agent shall be an original signed check and not a copy.
    (Note: Initial and increased deposits checks received by agent shall be recorded in Broker's trust fund log.)

  **B. INCREASED DEPOSIT:** Buyer shall deposit with Escrow Holder an increased deposit in the amount of . . . . . . . . $ _____
  within _____ **Days** After Acceptance (or _____ ).
  If the Parties agree to liquidated damages in this Agreement, they also agree to incorporate the increased
  deposit into the liquidated damages amount in a separate liquidated damages clause (C.A.R. Form
  RID) at the time the increased deposit is delivered to Escrow Holder.

  **C.** [X] **ALL CASH OFFER:** No loan is needed to purchase the Property. This offer is NOT contingent on Buyer
  obtaining a loan. Written verification of sufficient funds to close this transaction IS ATTACHED to this offer or
  ☐ Buyer shall, within 3 (or _____ ) Days After Acceptance, Deliver to Seller such verification.

  **D. LOAN(S):**
    **(1) FIRST LOAN:** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
    This loan will be conventional financing or ☐ FHA, ☐ VA, ☐ Seller financing (C.A.R. Form SFA),
    ☐ assumed financing (C.A.R. Form AFA), ☐ Other _____ . This loan shall be at a fixed
    rate not to exceed _____ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %.
    Regardless of the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
    **(2)** ☐ **SECOND LOAN** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
    This loan will be conventional financing or ☐ Seller financing (C.A.R. Form SFA), ☐ assumed
    financing (C.A.R. Form AFA), ☐ Other _____ . This loan shall be at a fixed rate not to
    exceed _____ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %. Regardless of
    the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
    **(3) FHA/VA:** For any FHA or VA loan specified in 3D(1), Buyer has **17 (or** _____ **) Days** After Acceptance
    to Deliver to Seller written notice (C.A.R. Form FVA) of any lender-required repairs or costs that
    Buyer requests Seller to pay for or otherwise correct. Seller has no obligation to pay or satisfy lender
    requirements unless agreed in writing. A FHA/VA amendatory clause (C.A.R. Form FVAC) shall be a
    part of this Agreement.

  **E. ADDITIONAL FINANCING TERMS:** _____

  **F. BALANCE OF DOWN PAYMENT OR PURCHASE PRICE** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . $ _____ *285,000.00*
  to be deposited with Escrow Holder pursuant to Escrow Holder instructions.

  **G. PURCHASE PRICE (TOTAL):** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____ *295,000.00*

Buyer's Initials ( *JII* ) ( _____ )          Seller's Initials ( _B_ ) ( _____ )

© 1991-2015, California Association of REALTORS®, Inc.

**RPA-CA REVISED 12/15 (PAGE 1 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 1 OF 10)**

Property Address: **5908 1/2 Fayette St, Los Angeles, CA  90042-2625**                    Date: **May 28, 2018**

**H.  VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Buyer (or Buyer's lender or loan broker pursuant to paragraph 3J(1)) shall, within **3 (or ____ ) Days** After Acceptance, Deliver to Seller written verification of Buyer's down payment and closing costs. (☒ Verification attached.)

**I.  APPRAISAL CONTINGENCY AND REMOVAL:** This Agreement is (**or** ☐ is NOT) contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the purchase price. Buyer shall, as specified in paragraph 14B(3), in writing, remove the appraisal contingency or cancel this Agreement within **17 (or ____ ) Days** After Acceptance.

**J.  LOAN TERMS:**
**(1) LOAN APPLICATIONS:** Within **3 (or ____ ) Days** After Acceptance, Buyer shall Deliver to Seller a letter from Buyer's lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in paragraph 3D. If any loan specified in paragraph 3D is an adjustable rate loan, the prequalification or preapproval letter shall be based on the qualifying rate, not the initial loan rate. (☐ Letter attached.)
**(2) LOAN CONTINGENCY:** Buyer shall act diligently and in good faith to obtain the designated loan(s). Buyer's qualification for the loan(s) specified above **is a contingency** of this Agreement unless otherwise agreed in writing. If there is no appraisal contingency or the appraisal contingency has been waived or removed, then failure of the Property to appraise at the purchase price does not entitle Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan. Buyer's contractual obligations regarding deposit, balance of down payment and closing costs **are not contingencies** of this Agreement.
**(3) LOAN CONTINGENCY REMOVAL:**
Within **21 (or ____ ) Days** After Acceptance, Buyer shall, as specified in paragraph 14, in writing, remove the loan contingency or cancel this Agreement. If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the appraisal contingency.
**(4)** ☒ **NO LOAN CONTINGENCY:** Obtaining any loan specified above is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a result does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.
**(5) LENDER LIMITS ON LOAN CREDITS:** Any credit to Buyer, from any source, for closing or other costs that is agreed to by the Parties ("Contractual Credit") shall be disclosed to Buyer's lender. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less than the Contractual Credit, then (i) the Contractual Credit shall be reduced to the Lender Allowable Credit, and (ii) in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.

**K.  BUYER STATED FINANCING:** Seller is relying on Buyer's representation of the type of financing specified (including but not limited to, as applicable, all cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a specific closing date, purchase price and to sell to Buyer in reliance on Buyer's covenant concerning financing. Buyer shall pursue the financing specified in this Agreement. Seller has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in the Agreement and the availability of any such alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

**4.  SALE OF BUYER'S PROPERTY:**
   **A.** This Agreement and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer.
**OR B.** ☐ This Agreement and Buyer's ability to obtain financing are contingent upon the sale of property owned by Buyer as specified in the attached addendum (C.A.R. Form COP).

**5.  ADDENDA AND ADVISORIES:**
   **A. ADDENDA:**                                                     ☐ Addendum #____ (C.A.R. Form ADM)
      ☐ Back Up Offer Addendum (C.A.R. Form BUO)              ☐ Court Confirmation Addendum (C.A.R. Form CCA)
      ☐ Septic, Well and Property Monument Addendum (C.A.R. Form SWPI)
      ☐ Short Sale Addendum (C.A.R. Form SSA)                 ☐ Other

   **B. BUYER AND SELLER ADVISORIES:**                        ☒ Buyer's Inspection Advisory (C.A.R. Form BIA)
      ☐ Probate Advisory (C.A.R. Form PA)                     ☒ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA)
      ☐ Trust Advisory (C.A.R. Form TA)                       ☐ REO Advisory (C.A.R. Form REO)
      ☐ Short Sale Information and Advisory (C.A.R. Form SSIA) ☒ Other DBD, MCA

**6.  OTHER TERMS:** *OFFER SUBJECT TO BANKRUPTCY COURT APPROVAL.*
Buyer is purchasing the
property with the intent to
make a profit

**7.  ALLOCATION OF COSTS**
   **A. INSPECTIONS, REPORTS AND CERTIFICATES:** Unless otherwise agreed in writing, this paragraph only determines who is to pay for the inspection, test, certificate or service ("Report") mentioned; it **does not determine who is to pay for any work recommended or identified in the Report.**
      **(1)** ☐ Buyer ☒ Seller shall pay for a natural hazard zone disclosure report, including tax ☒ environmental ☐ Other: _____
             prepared by *SELLER'S CHOICE* _____ .
      **(2)** ☐ Buyer ☐ Seller shall pay for the following Report _____
             prepared by _____ .
      **(3)** ☐ Buyer ☐ Seller shall pay for the following Report _____
             prepared by _____ .

Buyer's Initials ( *JII* ) ( _____ )                         Seller's Initials ( ☒ ) ( _____ )

**RPA-CA REVISED 12/15 (PAGE 2 OF 10)**
**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 2 OF 10)**

Property Address: **_5908 1/2 Fayette St, Los Angeles, CA  90042-2625_**                    Date: **_May 28, 2018_**

**B.  GOVERNMENT REQUIREMENTS AND RETROFIT:**

(1) ☐ Buyer ☒ Seller shall pay for smoke alarm and carbon monoxide device installation and water heater bracing, if required by Law. Prior to Close Of Escrow ("COE"), Seller shall provide Buyer written statement(s) of compliance in accordance with state and local Law, unless Seller is exempt.

(2) (i) ☐ Buyer ☒ Seller shall pay the cost of compliance with any other minimum mandatory government inspections and reports if required as a condition of closing escrow under any Law.

(ii) ☐ Buyer ☒ Seller shall pay the cost of compliance with any other minimum mandatory government retrofit standards required as a condition of closing escrow under any Law, whether the work is required to be completed before or after COE.

(iii) Buyer shall be provided, within the time specified in paragraph 14A, a copy of any required government conducted or point-of-sale inspection report prepared pursuant to this Agreement or in anticipation of this sale of the Property.

**C.  ESCROW AND TITLE:**

(1) (a) ☒ Buyer ☒ Seller shall pay escrow fee **_EACH TO PAY THEIR OWN FEES_**

(b) Escrow Holder shall be **_SELLER'S CHOICE_**                                                  .

(c) The Parties shall, within **5 (or ___ ) Days** After receipt, sign and return Escrow Holder's general provisions.

(2) (a) ☐ Buyer ☒ Seller shall pay for **owner's** title insurance policy specified in paragraph 13E _____

(b) Owner's title policy to be issued by **_SELLER'S CHOICE_**                                      .

(Buyer shall pay for any title insurance policy insuring Buyer's **lender**, unless otherwise agreed in writing.)

**D.  OTHER COSTS:**

(1) ☐ Buyer ☒ Seller shall pay County transfer tax or fee _____ .

(2) ☐ Buyer ☒ Seller shall pay City transfer tax or fee _____ .

(3) ☐ Buyer ☐ Seller shall pay Homeowners' Association ("HOA") transfer fee _____ .

(4) Seller shall pay HOA fees for preparing documents required to be delivered by Civil Code §4525.

(5) ☐ Buyer ☐ Seller shall pay HOA fees for preparing all documents other than those required by Civil Code §4525.

(6) Buyer to pay for any HOA certification fee.

(7) ☐ Buyer ☒ Seller shall pay for any private transfer fee _____ .

(8) ☐ Buyer ☐ Seller shall pay for _____ .

(9) ☐ Buyer ☐ Seller shall pay for _____ .

(10) ☐ Buyer ☐ Seller shall pay for the cost, not to exceed $ _____ , of a standard (or ☐ upgraded) one-year home warranty plan, issued by _____ , with the following optional coverages: ☐ Air Conditioner ☐ Pool/Spa ☐ Other: _____ Buyer is informed that home warranty plans have many optional coverages in addition to those listed above. Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer.

OR ☒ **Buyer waives the purchase of a home warranty plan. Nothing in this paragraph precludes Buyer's purchasing a home warranty plan during the term of this Agreement.**

**8.  ITEMS INCLUDED IN AND EXCLUDED FROM SALE:**

**A. NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the MLS, flyers or marketing materials are **not** included in the purchase price or excluded from the sale unless specified in paragraph 8 B or C.

**B. ITEMS INCLUDED IN SALE:** Except as otherwise specified or disclosed,

(1) All EXISTING fixtures and fittings that are attached to the Property;

(2) EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar power systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water features and fountains, water softeners, water purifiers, security systems/alarms and the following if checked: ☐ all stove(s), except _____ ; ☐ all refrigerator(s) except _____ ; ☐ all washer(s) and dryer(s), except _____ ;

(3) The following additional items: _____

(4) Existing integrated phone and home automation systems, including necessary components such as intranet and Internet-connected hardware or devices, control units (other than non-dedicated mobile devices, electronics and computers) and applicable software, permissions, passwords, codes and access information, are ( ☐ are NOT) included in the sale.

(5) **LEASED OR LIENED ITEMS AND SYSTEMS:** Seller shall, within the time specified in paragraph 14A, (i) disclose to Buyer if any item or system specified in paragraph 8B or otherwise included in the sale is leased, or not owned by Seller, or specifically subject to a lien or other encumbrance, and (ii) Deliver to Buyer all written materials (such as lease, warranty, etc.) concerning any such item. Buyer's ability to assume any such lease, or willingness to accept the Property subject to any such lien or encumbrance, is a contingency in favor of Buyer and Seller as specified in paragraph 14B and C.

(6) Seller represents that all items included in the purchase price, unless otherwise specified, (i) are owned by Seller and shall be transferred free and clear of liens and encumbrances, except the items and systems identified pursuant to 8B(5) and _____ , and (ii) are transferred without Seller warranty regardless of value.

**C. ITEMS EXCLUDED FROM SALE:** Unless otherwise specified, the following items are excluded from sale: (i) audio and video components (such as flat screen TVs, speakers and other items) if any such item is not itself attached to the Property, even if a bracket or other mechanism attached to the component or item is attached to the Property; (ii) furniture and other items secured to the Property for earthquake purposes; and (iii) _____

_____ . **Brackets attached to walls, floors or ceilings for any such component, furniture or item shall remain with the Property (or ☐ will be removed and holes or other damage shall be repaired, but not painted).**

Buyer's Initials ( _JJ_ ) ( _____ )                    Seller's Initials ( [signature] ) ( _____ )

**RPA-CA REVISED 12/15 (PAGE 3 OF 10)**

Property Address: **5908 1/2 Fayette St, Los Angeles, CA  90042-2625**_____ Date: **May 28, 2018**_____

**9.  CLOSING AND POSSESSION:**

  **A.** Buyer intends (or [X] does not intend) to occupy the Property as Buyer's primary residence.

  **B.  Seller-occupied or vacant property:** Possession shall be delivered to Buyer: (i) at 6 PM or (___ [ ] AM/[ ] PM) on the date of Close Of Escrow; (ii) [ ] no later than ___ calendar days after Close Of Escrow; or (iii) [ ] at _____ [ ] AM/[ ] PM on _____ .

  **C.  Seller remaining in possession After Close Of Escrow:** If Seller has the right to remain in possession after Close Of Escrow, (i) the Parties are advised to sign a separate occupancy agreement such as [ ] C.A.R. Form SIP, for Seller continued occupancy of less than 30 days, [ ] C.A.R. Form RLAS for Seller continued occupancy of 30 days or more; and (ii) the Parties are advised to consult with their insurance and legal advisors for information about liability and damage or injury to persons and personal and real property; and (iii) Buyer is advised to consult with Buyer's lender about the impact of Seller's occupancy on Buyer's loan.

  **D.  Tenant-occupied property:** Property shall be vacant at least **5 (or** ___ **) Days** Prior to Close Of Escrow, unless otherwise agreed in writing. **Note to Seller: If you are unable to deliver Property vacant in accordance with rent control and other applicable Law, you may be in breach of this Agreement.**

  **OR** [ ] **Tenant to remain in possession (C.A.R. Form TIP).**

  **E.** At Close Of Escrow: Seller assigns to Buyer any assignable warranty rights for items included in the sale; and Seller shall Deliver to Buyer available Copies of any such warranties. Brokers cannot and will not determine the assignability of any warranties.

  **F.** At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys, passwords, codes and/or means to operate all locks, mailboxes, security systems, alarms, home automation systems and intranet and Internet-connected devices included in the purchase price, and garage door openers. If the Property is a condominium or located in a common interest subdivision, Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

**10.  STATUTORY AND OTHER DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**

  **A. (1)** Seller shall, within the time specified in paragraph 14A, Deliver to Buyer: (i) if required by Law, a fully completed: Federal Lead-Based Paint Disclosures (C.A.R. Form FLD) and pamphlet ("Lead Disclosures"); and **(ii)** unless exempt, fully completed disclosures or notices required by sections 1102 et. seq. and 1103 et. seq. of the Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement ("TDS"), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act of 1982 and Improvement Bond Act of 1915) and, if Seller has actual knowledge, of industrial use and military ordnance location (C.A.R. Form SPQ or ESD).

  **(2)** Any Statutory Disclosure required by this paragraph is considered fully completed if Seller has answered all questions and completed and signed the Seller section(s) and the Listing Agent, if any, has completed and signed the Listing Broker section(s), or, if applicable, an Agent Visual Inspection Disclosure (C.A.R. Form AVID). Nothing stated herein relieves a Buyer's Broker, if any, from the obligation to (i) conduct a reasonably competent and diligent visual inspection of the accessible areas of the Property and disclose, on Section IV of the TDS, or an AVID, material facts affecting the value or desirability of the Property that were or should have been revealed by such an inspection or (ii) complete any sections on all disclosures required to be completed by Buyer's Broker.

  **(3) Note to Buyer and Seller:** Waiver of Statutory and Lead Disclosures is prohibited by Law.

  **(4)** Within the time specified in paragraph 14A, **(i)** Seller, unless exempt from the obligation to provide a TDS, shall, complete and provide Buyer with a Seller Property Questionnaire (C.A.R. Form SPQ); (ii) if Seller is not required to provide a TDS, Seller shall complete and provide Buyer with an Exempt Seller Disclosure (C.A.R. Form ESD).

  **(5)** Buyer shall, within the time specified in paragraph 14B(1), return Signed Copies of the Statutory, Lead and other disclosures to Seller.

  **(6)** In the event Seller or Listing Broker, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer, Seller shall promptly provide a subsequent or amended disclosure or notice, in writing, covering those items. **However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies** of which Buyer is otherwise aware, or which are **disclosed in reports provided to or obtained by Buyer or ordered and paid for by Buyer.**

  **(7)** If any disclosure or notice specified in paragraph 10A(1), or subsequent or amended disclosure or notice is Delivered to Buyer after the offer is Signed, Buyer shall have the right to cancel this Agreement within **3 Days** After Delivery in person, or **5 Days** After Delivery by deposit in the mail, by giving written notice of cancellation to Seller or Seller's agent.

  **B.  NATURAL AND ENVIRONMENTAL HAZARD DISCLOSURES AND OTHER BOOKLETS:** Within the time specified in paragraph 14A, Seller shall, if required by Law: **(i)** Deliver to Buyer earthquake guide(s) (and questionnaire), environmental hazards booklet, and home energy rating pamphlet; **(ii)** disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; and Seismic Hazard Zone; and **(iii)** disclose any other zone as required by Law and provide any other information required for those zones.

  **C.  WITHHOLDING TAXES:** Within the time specified in paragraph 14A, to avoid required withholding, Seller shall Deliver to Buyer or qualified substitute, an affidavit sufficient to comply with federal (FIRPTA) and California withholding Law (C.A.R. Form AS or QS).

  **D.  MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at **www.meganslaw.ca.gov.** Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Brokers are required to check this website. If Buyer wants further information, Broker recommends that Buyer obtain information from this website during Buyer's inspection contingency period. Brokers do not have expertise in this area.)

  **E.  NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES:** This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at **http://www.npms.phmsa.dot.gov/.** To seek further information about possible transmission pipelines near the Property, you may contact your local gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Web site.

  **F.  CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**

  **(1) SELLER HAS: 7 (or** ___ **) Days** After Acceptance to disclose to Buyer if the Property is a condominium, or is located in a planned development or other common interest subdivision (C.A.R. Form SPQ or ESD).

Buyer's Initials ( _JJJ_ ) ( _____ )                                Seller's Initials ( _____ ) ( _____ )

Property Address: **5908 1/2 Fayette St, Los Angeles, CA  90042-2625** _____ Date: **May 28, 2018**

**(2)** If the Property is a condominium or is located in a planned development or other common interest subdivision, Seller has **3 (or ___ ) Days** After Acceptance to request from the HOA (C.A.R. Form HOA1): **(i)** Copies of any documents required by Law; **(ii)** disclosure of any pending or anticipated claim or litigation by or against the HOA; **(iii)** a statement containing the location and number of designated parking and storage spaces; **(iv)** Copies of the most recent 12 months of HOA minutes for regular and special meetings; and **(v)** the names and contact information of all HOAs governing the Property (collectively, "CI Disclosures"). **(vi)** private transfer fees; **(vii)** Pet fee restrictions; and **(viii)** smoking restrictions. Seller shall itemize and Deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 14B(3). The Party specified in paragraph 7, as directed by escrow, shall deposit funds into escrow or direct to HOA or management company to pay for any of the above.

**11. CONDITION OF PROPERTY:** Unless otherwise agreed in writing: **(i)** the Property is sold **(a)** "AS-IS" in its PRESENT physical condition as of the date of Acceptance and **(b)** subject to Buyer's Investigation rights; **(ii)** the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and **(iii)** all debris and personal property not included in the sale shall be removed by Close Of Escrow.

   **A.** Seller shall, within the time specified in paragraph 14A, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, and make any and all other disclosures required by law.

   **B.** Buyer has the right to conduct Buyer Investigations of the Property and, as specified in paragraph 14B, based upon information discovered in those investigations: (i) cancel this Agreement; or (ii) request that Seller make Repairs or take other action.

   **C. Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.**

**12. BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**

   **A.** Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and paragraph 14B. Within the time specified in paragraph 14B(1), Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to: **(i)** a general physical inspection; **(ii)** an inspection specifically for wood destroying pests and organisms. Any inspection for wood destroying pests and organisms shall be prepared by a registered Structural Pest Control company; shall cover the main building and attached structures; may cover detached structures; shall NOT include water tests of shower pans on upper level units unless the owners of property below the shower consent; shall NOT include roof coverings; and, if the Property is a unit in a condominium or other common interest subdivision, the inspection shall include only the separate interest and any exclusive-use areas being transferred, and shall NOT include common areas; and shall include a report ("Pest Control Report") showing the findings of the company which shall be separated into sections for evident infestation or infections (Section 1) and for conditions likely to lead to infestation or infection (Section 2); **(iii)** inspect for lead-based paint and other lead-based paint hazards; **(iv)** satisfy Buyer as to any matter specified in the attached Buyer's Inspection Advisory (C.A.R. Form BIA); (v) review the registered sex offender database; **(vi)** confirm the insurability of Buyer and the Property including the availability and cost of flood and fire insurance; and **(vii)** review and seek approval of leases that may need to be assumed by Buyer. Without Seller's prior written consent, Buyer shall neither make nor cause to be made: invasive or destructive Buyer Investigations, except for minimally invasive testing required to prepare a Pest Control Report; or inspections by any governmental building or zoning inspector or government employee, unless required by Law.

   **B.** Seller shall make the Property available for all Buyer Investigations. Buyer shall **(i)** as specified in paragraph 14B, complete Buyer Investigations and either remove the contingency or cancel this Agreement, and **(ii)** give Seller, at no cost, complete Copies of all such Investigation reports obtained by Buyer, which obligation shall survive the termination of this Agreement.

   **C.** Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is made available to Buyer.

   **D. Buyer indemnity and seller protection for entry upon property:** Buyer shall: **(i)** keep the Property free and clear of liens; **(ii)** repair all damage arising from Buyer Investigations; and **(iii)** indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

**13. TITLE AND VESTING:**

   **A.** Within the time specified in paragraph 14, Buyer shall be provided a current preliminary title report ("Preliminary Report"). The Preliminary Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the Preliminary Report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 14B. The company providing the Preliminary Report shall, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers except banks or other institutional lenders selling properties they acquired through foreclosure (REOs), corporations, and government entities. Seller shall within 7 Days After Acceptance, give Escrow Holder a completed Statement of Information.

   **B.** Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except for: **(i)** monetary liens of record (which Seller is obligated to pay off) unless Buyer is assuming those obligations or taking the Property subject to those obligations; and **(ii)** those matters which Seller has agreed to remove in writing.

   **C.** Within the time specified in paragraph 14A, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.

   **D.** At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

Buyer's Initials ( _JJ_ ) ( _____ )      Seller's Initials ( _____ ) ( _____ )

**RPA-CA REVISED 12/15 (PAGE 5 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 5 OF 10)**

Property Address: **_5908 1/2 Fayette St, Los Angeles, CA  90042-2625_** _____ Date: **_May 28, 2018_**

   E. Buyer shall receive a CLTA/ALTA "Homeowner's Policy of Title Insurance", if applicable to the type of property and buyer. If not, Escrow Holder shall notify Buyer. A title company can provide information about the availability, coverage, and cost of other title policies and endorsements. If the Homeowner's Policy is not available, Buyer shall choose another policy, instruct Escrow Holder in writing and shall pay any increase in cost.

**14. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR or CC).**

   A. **SELLER HAS: 7 (or ____ ) Days** After Acceptance to Deliver to Buyer all Reports, disclosures and information for which Seller is responsible under paragraphs 5, 6, 7, 8B(5), 10A, B, C, and F, 11A and 13A. If, by the time specified, Seller has not Delivered any such item, Buyer after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP) may cancel this Agreement.

   B. **(1) BUYER HAS: 17 (or ____ ) Days** After Acceptance, unless otherwise agreed in writing, to: **(i)** complete all Buyer Investigations; review all disclosures, reports, lease documents to be assumed by Buyer pursuant to paragraph 8B(5), and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property; and **(ii)** Deliver to Seller Signed Copies of Statutory and Lead Disclosures and other disclosures Delivered by Seller in accordance with paragraph 10A.

      **(2)** Within the time specified in paragraph 14B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to (C.A.R. Form RRRR) Buyer's requests.

      **(3)** By the end of the time specified in paragraph 14B(1) (or as otherwise specified in this Agreement), Buyer shall Deliver to Seller a removal of the applicable contingency or cancellation (C.A.R. Form CR or CC) of this Agreement. However, if any report, disclosure or information for which Seller is responsible is not Delivered within the time specified in paragraph 14A, then Buyer has **5 (or ____ ) Days** After Delivery of any such items, or the time specified in paragraph 14B(1), whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement.

      **(4) Continuation of Contingency:** Even after the end of the time specified in paragraph 14B(1) and before Seller cancels, if at all, pursuant to paragraph 14D, Buyer retains the right, in writing, to either (i) remove remaining contingencies, or (ii) cancel this Agreement based on a remaining contingency. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to paragraph 14D(1).

      **(5) Access to Property:** Buyer shall have access to the Property to conduct inspections and investigations for **17 (or ____ ) Days** After Acceptance, whether or not any part of the Buyer's Investigation Contingency has been waived or removed.

   C. ☐**REMOVAL OF CONTINGENCIES WITH OFFER: Buyer removes the contingencies specified in the attached Contingency Removal form (C.A.R. Form CR). If Buyer removes any contingency without an adequate understanding of the Property's condition or Buyer's ability to purchase, Buyer is acting against the advice of Broker.**

   D. **SELLER RIGHT TO CANCEL:**

      **(1) Seller right to Cancel; Buyer Contingencies:** If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

      **(2) Seller right to Cancel; Buyer Contract Obligations:** Seller, after first delivering to Buyer a NBP, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action(s): **(i)** Deposit funds as required by paragraph 3A, or 3B or if the funds deposited pursuant to paragraph 3A or 3B are not good when deposited; **(ii)** Deliver a notice of FHA or VA costs or terms as required by paragraph 3D(3) (C.A.R. Form FVA); **(iii)** Deliver a letter as required by paragraph 3J(1); **(iv)** Deliver verification, or a satisfactory verification if Seller reasonably disapproves of the verification already provided, as required by paragraph 3C or 3H; **(v)** In writing assume or accept leases or liens specified in 8B5; **(vi)** Return Statutory and Lead Disclosures as required by paragraph 10A(5); or **(vii)** Sign or initial a separate liquidated damages form for an increased deposit as required by paragraphs 3B and 21B; or **(viii)** Provide evidence of authority to sign in a representative capacity as specified in paragraph 19. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

   E. **NOTICE TO BUYER OR SELLER TO PERFORM:** The NBP or NSP shall: **(i)** be in writing; **(ii)** be signed by the applicable Buyer or Seller; and **(iii)** give the other Party at least **2 (or ____ ) Days** After Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A NBP or NSP may not be Delivered any earlier than **2 Days** Prior to the expiration of the applicable time for the other Party to remove a contingency or cancel this Agreement or meet an obligation specified in paragraph 14.

   F. **EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in writing, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; **(ii)** elected to proceed with the transaction; and **(iii)** assumed all liability, responsibility and expense for Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.

   G. **CLOSE OF ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a demand to close escrow (C.A.R. Form DCE). The DCE shall: **(i)** be signed by the applicable Buyer or Seller; and **(ii)** give the other Party at least **3 (or ____ ) Days** After Delivery to close escrow. A DCE may not be Delivered any earlier than **3 Days** Prior to the scheduled close of escrow.

   H. **EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign mutual instructions to cancel the sale and escrow and release deposits, if any, to the party entitled to the funds, less fees and costs incurred by that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. Except as specified below, **release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award.** If either Party fails to execute mutual instructions to cancel escrow, one Party may make a written demand to Escrow Holder for the deposit. (C.A.R. Form BDRD or SDRD). Escrow Holder, upon receipt, shall promptly deliver notice of the demand to the other Party. If, within 10 Days After Escrow Holder's notice, the other Party does not object to the demand, Escrow Holder shall disburse the deposit to the Party making the demand. If Escrow Holder complies with the preceding process, each Party shall be deemed to have released Escrow Holder from any and all claims or liability related to the disbursal of the deposit. Escrow Holder, at its discretion, may nonetheless require mutual cancellation instructions. **A Party may be subject to a civil penalty of up to $1,000 for refusal to sign cancellation instructions if no good faith dispute exists as to who is entitled to the deposited funds (Civil Code §1057.3).**

Buyer's Initials ( _JII_ )( _____ )          Seller's Initials ( _____ )( _____ )

**RPA-CA REVISED 12/15 (PAGE 6 OF 10)**

Property Address: **5908 1/2 Fayette St, Los Angeles, CA  90042-2625**                                  Date: **May 28, 2018**

**15. FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final verification of the Property within **5 (or ☐ ____ ) Days** Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: **(i)** the Property is maintained pursuant to paragraph 11; **(ii)** Repairs have been completed as agreed; and **(iii)** Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

**16. REPAIRS:** Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: **(i)** obtain invoices and paid receipts for Repairs performed by others; **(ii)** prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and **(iii)** provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.

**17. PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are now a lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: **(i)** for periods after Close Of Escrow, by Buyer; and **(ii)** for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

**18. BROKERS:**

   **A. COMPENSATION:** Seller or Buyer, or both, as applicable, agree to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.

   **B. SCOPE OF DUTY:** Buyer and Seller acknowledge and agree that Broker: **(i)** Does not decide what price Buyer should pay or Seller should accept; **(ii)** Does not guarantee the condition of the Property; **(iii)** Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; **(iv)** Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; **(v)** Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Broker; **(vi)** Shall not be responsible for inspecting public records or permits concerning the title or use of Property; **(vii)** Shall not be responsible for identifying the location of boundary lines or other items affecting title; **(viii)** Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; **(ix)** Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; **(x)** Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and **(xi)** Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

**19. REPRESENTATIVE CAPACITY:** If one or more Parties is signing this Agreement in a representative capacity and not for him/herself as an individual then that Party shall so indicate in paragraph 31 or 32 and attach a Representative Capacity Signature Disclosure (C.A.R. Form RCSD). Wherever the signature or initials of the representative identified in the RCSD appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Party acting in a representative capacity (i) represents that the entity for which that party is acting already exists and (ii) shall Deliver to the other Party and Escrow Holder, within **3 Days** After Acceptance, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code §18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

**20. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**

   **A.** The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions **of Buyer and Seller to Escrow Holder,** which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: paragraphs 1, 3, 4B, 5A, 6, 7, 10C, 13, 14H, 17, 18A, 19, 20, 26, 29, 30, 31, 32 and paragraph D of the section titled Real Estate Brokers on page 10. If a Copy of the separate compensation agreement(s) provided for in paragraph 18A, or paragraph D of the section titled Real Estate Brokers on page 10 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder and will execute such provisions within the time specified in paragraph 7C(1)(c). To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, within **3 (or ____ ) Days,** shall pay to Escrow Holder or HOA or HOA management company or others any fee required by paragraphs 7, 10 or elsewhere in this Agreement.

   **B.** A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within **3 Days** After Acceptance (or _____ ). Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title company when received from Seller. If Seller delivers an affidavit (see Escrow Holder to satisfy Seller's FIRPTA obligation under paragraph 10C, Escrow Holder shall deliver to Buyer a Qualified Substitute statement that complies with federal Law.

Buyer's Initials ( _JJ_ ) ( _____ )                                        Seller's Initials ( _____ ) ( _____ )

**RPA-CA REVISED 12/15 (PAGE 7 OF 10)**

Property Address: **5908 1/2 Fayette St, Los Angeles, CA  90042-2625**                    Date: **May 28, 2018**

**C.** Brokers are a party to the escrow for the sole purpose of compensation pursuant to paragraph 18A and paragraph D of the section titled Real Estate Brokers on page 10. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraph 18A, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.

**D.** Upon receipt, Escrow Holder shall provide Seller and Seller's Broker verification of Buyer's deposit of funds pursuant to paragraph 3A and 3B. Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify all Brokers: (i) if Buyer's initial or any additional deposit or down payment is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or (ii) if Buyer and Seller instruct Escrow Holder to cancel escrow.

**E.** A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within 3 Days after mutual execution of the amendment.

**21. REMEDIES FOR BUYER'S BREACH OF CONTRACT:** -

**A.** Any clause added by the Parties specifying a remedy (such as release or forfeiture of deposit or making a deposit **non-refundable) for failure of Buyer to complete the purchase in violation of this Agreement shall be deemed invalid unless the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code.**

**B.** **LIQUIDATED DAMAGES: If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Except as provided in paragraph 14H, release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award, AT THE TIME OF ANY INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R. FORM ).**

Buyer's Initials _JJJ_ / _____                    Seller's Initials _____ / _____

**22. DISPUTE RESOLUTION:**

**A.** **MEDIATION:** The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action through the C.A.R. Real Estate Mediation Center for Consumers (**www.consumermediation.org**) or through any other mediation provider or service mutually agreed to by the Parties. The Parties **also agree to mediate any disputes or claims with Broker(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Broker.** Mediation fees, if any, shall be divided equally among the Parties involved. If, for any dispute or claim to which this paragraph applies, any Party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED. **Exclusions from this mediation agreement are specified in paragraph 22C.**

**B.** **ARBITRATION OF DISPUTES:**

**The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The Parties also agree to arbitrate any disputes or claims with Broker(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator. The Parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Enforcement of this agreement to arbitrate shall be governed by the Federal Arbitration Act. Exclusions from this arbitration agreement are specified in paragraph 22C.**

**"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."**

**"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."**

Buyer's Initials _____ / _____                    Seller's Initials _____ / _____

**C.** ADDITIONAL MEDIATION AND ARBITRATION TERMS:

(1) **EXCLUSIONS: The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; and (iii) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court.**

Buyer's Initials ( _JJJ_ ) ( _____ )                    Seller's Initials ( ___ ) ( _____ )

**RPA-CA REVISED 12/15 (PAGE 8 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 8 OF 10)**

Property Address: **_5908 1/2 Fayette St, Los Angeles, CA 90042-2625_** _____ Date: **_May 28, 2018_**

**(2) PRESERVATION OF ACTIONS:** The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: (i) the filing of a court action to preserve a statute of limitations; (ii) the filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies; or (iii) the filing of a mechanic's lien.

**(3) BROKERS:** Brokers shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Broker(s) participating in mediation or arbitration shall not be deemed a party to this Agreement.

**23. SELECTION OF SERVICE PROVIDERS:** Brokers do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Broker or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

**24. MULTIPLE LISTING SERVICE ("MLS"):** Brokers are authorized to report to the MLS a pending sale and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS.

**25. ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 22A.

**26. ASSIGNMENT:** Buyer shall not assign all or any part of Buyer's interest in this Agreement without first having obtained the separate written consent of Seller to a specified assignee. Such consent shall not be unreasonably withheld. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless otherwise agreed in writing by Seller. (C.A.R. Form AOAA).

**27. EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

**28. TERMS AND CONDITIONS OF OFFER:**
This is an offer to purchase the Property on the above terms and conditions. The liquidated damages paragraph or the arbitration of disputes paragraph is incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a counter offer or addendum. If at least one but not all Parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. The Parties have read and acknowledge receipt of a Copy of the offer and agree to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

**29. TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:**    Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as otherwise specified, this Agreement shall be interpreted and disputes shall be resolved in accordance with the Laws of the State of California. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**

**30. DEFINITIONS:** As used in this Agreement:

**A.** **"Acceptance"** means the time the offer or final counter offer is accepted in writing by a Party and is delivered to and personally received by the other Party or that Party's authorized agent in accordance with the terms of this offer or a final counter offer.

**B.** **"Agreement"** means this document and any counter offers and any incorporated addenda, collectively forming the binding agreement between the Parties. Addenda are incorporated only when Signed by all Parties.

**C.** **"C.A.R. Form"** means the most current version of the specific form referenced or another comparable form agreed to by the parties.

**D.** **"Close Of Escrow"**, including "COE", means the date the grant deed, or other evidence of transfer of title, is recorded.

**E.** **"Copy"** means copy by any means including photocopy, NCR, facsimile and electronic.

**F.** **"Days"** means calendar days. However, after Acceptance, the last **Day** for performance of any act required by this Agreement (including Close Of Escrow) shall not include any Saturday, Sunday, or legal holiday and shall instead be the next Day.

**G.** **"Days After"** means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59 PM on the final day.

**H.** **"Days Prior"** means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.

**I.** **"Deliver", "Delivered"** or **"Delivery"**, unless otherwise specified in writing, means and shall be effective upon: personal receipt by Buyer or Seller or the individual Real Estate Licensee for that principal as specified in the section titled Real Estate Brokers on page 10, regardless of the method used (i.e., messenger, mail, email, fax, other).

**J.** **"Electronic Copy"** or **"Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.

**K.** **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.

**L.** **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.

**M.** **"Signed"** means either a handwritten or electronic signature on an original document, Copy or any counterpart.

**31. EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless the offer is Signed by Seller and a Copy of the Signed offer is personally received by Buyer, or by _____,
who is authorized to receive it, by 5:00 PM on the third Day after this offer is signed by Buyer (or by ☐ _____ ☐ AM/ ☐ PM,
on _____ (date)).

☒ One or more Buyers is signing this Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-B) for additional terms.

Date _____ BUYER _____
05/28/2018 06:51 PM
PDT
**(Print name)** **_Journey Investments, LLC_**

Date _____ BUYER _____
**(Print name)** _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

Seller's Initials ( _____ ) ( _____ )



**RPA-CA REVISED 12/15 (PAGE 9 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 9 OF 10)**

Property Address: **5908 1/2 Fayette St, Los Angeles, CA  90042-2625**                                   Date: **May 28, 2018**

**32. ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer, and agrees to sell the Property on the above terms and conditions. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to Deliver a Signed Copy to Buyer.

☐ (If checked) SELLER'S ACCEPTANCE IS **SUBJECT TO ATTACHED COUNTER OFFER (C.A.R. Form SCO or SMCO) DATED:**

☐ One or more Sellers is signing this Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-S) for additional terms.

Date _6/01/18_   SELLER _____

**(Print name)** _Monge Property Investments Inc_

Date _____   SELLER . _____

**(Print name)** _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

( _____ / _____ ) **(Do not initial if making a counter offer.) CONFIRMATION OF ACCEPTANCE:** A Copy of Signed Acceptance was
  (Initials)       personally received by Buyer or Buyer's authorized agent on (date) _____ at _____
           ☐ AM/ ☐ PM. **A binding Agreement is created when a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.**

---

**REAL ESTATE BROKERS:**
**A. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.**
**B. Agency relationships are confirmed as stated in paragraph 2.**
**C.** If specified in paragraph 3A(2), Agent who submitted the offer for Buyer acknowledges receipt of deposit.
**D. COOPERATING BROKER COMPENSATION:** Listing Broker agrees to pay Cooperating Broker **(Selling Firm)** and Cooperating Broker agrees to accept, out of Listing Broker's proceeds in escrow, the amount specified in the MLS, provided Cooperating Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS. If Listing Broker and Cooperating Broker are not both Participants of the MLS, or a reciprocal MLS, in which the Property is offered for sale, then compensation must be specified in a separate written agreement (C.A.R. Form CBC). Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.

Real Estate Broker (Selling Firm) **REMAX 6000 REALTY** _____   CalBRE Lic. # **01907388**
By _____ **VU LY** CalBRE Lic. # **01860736**   Date **05/28/2018**
By _____   CalBRE Lic. # _____   Date _____
Address **159 E. LIVE OAK AVE. #106** _____ City **ARCADIA** _____   State **CA**   Zip **91006**
Telephone **(323)997-0786**   Fax **(626)538-6088**   E-mail **VUTLY@YAHOO.COM**
Real Estate Broker (Listing Firm) **REMAX 6000 REALTY** _____   CalBRE Lic. # **01907388**
By _____ **VU LY** CalBRE Lic. # **01860736**   Date **05/28/2018**
By _____   CalBRE Lic. # _____   Date _____
Address _____   City _____   State _____ Zip _____
Telephone _____ Fax _____   E-mail _____

---

**ESCROW HOLDER ACKNOWLEDGEMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked) ☐ a deposit in the amount of $ _____ ),
counter offer numbers _____ ☐ Seller's Statement of Information and _____
_____ , and agrees to act as Escrow Holder subject to paragraph 20 of this Agreement, any
supplemental escrow instructions and the terms of Escrow Holder's general provisions.

Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _____

Escrow Holder _____   Escrow # _____
By _____   Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder has the following license number # _____
☐ Department of Business Oversight, ☐ Department of Insurance, ☐ Bureau of Real Estate.

---

**PRESENTATION OF OFFER:** ( _____ ) Listing Broker presented this offer to Seller on _____ (date).
                            Broker or Designee Initials

**REJECTION OF OFFER:** ( _____ ) ( _____ ) No counter offer is being made. This offer was rejected by Seller on _____ (date).
                          Seller's Initials

©1991- 2015, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
©525 South Virgil Avenue, Los Angeles, California 90020

Buyer Acknowledges that page 10 is part of this Agreement ( _JTT_ )( _____ )
                                                                Buyer's Initials

Reviewed by _____
Broker or Designee

**RPA-CA REVISED 12/15 (PAGE 10 of 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 10 OF 10)**



**BANK OF THE WEST**
BNP PARIBAS

# Account Overview

## Banking

| CHECKING & SAVINGS | CURRENT BALANCE | AVAILABLE BALANCE |
|---|---|---|
| JOURNEY INVESTMENTS | $2,033,500.91 | $2,026,650.91 |
| WEALTH MONEY MARKET SAVINGS | $23,612.24 | $23,612.24 |
| WEALTH MONEY MARKET SAVINGS | $36,646.09 | $36,646.09 |

| CREDIT ACCOUNTS[1] | CURRENT BALANCE | AVAILABLE CREDIT |
|---|---|---|
| EQUITY CHOICE | $0.00 | $200,000.00 |

## ACTION BY WRITTEN CONSENT
## OF THE
## SOLE DIRECTOR AND SHAREHOLDER

The undersigned being the sole director and shareholder of JOURNEY INVESTMENTS INC., a California corporation (hereinafter the "Company"), do hereby approve the following actions on behalf of the Company:

WHEREAS, the Company is engaged in the business of identifying properties for investment ("Investment Properties"), including the negotiating of agreements for the purchase and sale of Investment Properties ("Agreements"), the purchasing and selling of Investment Properties and the purchasing and selling of rights under Agreements; and

WHEREAS, the Company identifies properties from time to time (each a "Property" and collectively the "Properties") as desirable Investment Properties, and the Company desires to enter into agreements (each, an "Agreement") to purchase one or more Properties, to sell one or more Properties and/or to sell the Company's rights under an agreement to purchase one or more Properties; and

NOW, THEREFORE, BE IT RESOLVED that (i) Michelle Betancourt ("Agent") is hereby authorized, empowered and directed to execute and deliver Agreement(s) on behalf of the Company, and to complete all actions as are necessary or advisable to complete the transactions described therein, and to otherwise carry out the obligations of the Company provided for in the Agreement(s) including, without limitation, execution and delivery of any papers, documents, and instruments as are necessary, proper and convenient to fulfill the intentions of these resolutions, and (ii) any such Agreement(s) executed by Agent shall be binding upon the Company.

Dated and approved by the undersigned, being the sole Director and shareholder of the Company, effective on this 1st day of March 20 18.

JOURNEY INVESTMENTS INC., A CALIFORNIA CORPORATION

Director:

_____
GONZALO DIAZ

Shareholder:

_____
GONZALO DIAZ

3001377

STATE *of* CALIFORNIA
ARTICLES *of* INCORPORATION
A STOCK CORPORATION

**FILED**
Secretary of State
State of California

JUN 2 4 2015

IPC

### ARTICLE I.

The name of this corporation is JOURNEY INVESTMENTS INC.

### ARTICLE II.

The purpose of the corporation is to engage in any lawful act or activity for which a corporation may be organized under the General Corporation Law of California other than the banking business, the trust company business or the practice of a profession permitted to be incorporated by the California Corporations Code.

### ARTICLE III.

The name of the initial agent for service of process in the State of California for the corporation is LEGALINC CORPORATE SERVICES INC.

### ARTICLE IV.

The initial street address of the corporation is 17792 Lerene Drive, Yorba Linda, CA 92886.

### ARTICLE V.

This corporation is authorized to issue only one class of shares of stock, and the total number of shares which this corporation is authorized to issue is 1,500.

### ARTICLE VI.

The liability of the directors of the corporation for monetary damages shall be eliminated to the fullest extent permissible under California Law. The corporation is authorized to provide indemnification of agents (as defined in Section 317 of the California Corporations Code) for breach of duty to the corporation and shareholders through bylaw provisions or through agreements with the agents, or both, in excess of the indemnification otherwise permitted by Section 317 of the California Corporations Code, subject to the limits on such excess indemnification set forth in Section 204 of the California Corporations Code.

**Dated:** June 18th, 2015

_____
Marsha Siha, Incorporator

**STATE *of* CALIFORNIA**
**STATEMENT *of the* INCORPORATOR**
**A STOCK/PROFIT CORPORATION**

The undersigned, the Incorporator of JOURNEY INVESTMENTS INC, who signed and filed its Articles of Incorporation (or similar organizing document) with the California Secretary of State (or other appropriate state office), appoints the following individuals to serve as directors of the corporation, who shall serve as directors until the first meeting of shareholders for the election of directors and until their successors are elected and agree to serve on the board:

Name and address of each initial director:

GONZALO DIAZ
17792 LERENE DRIVE
YORBA LINDA, CA 92886

**Dated: July 22nd, 2015**

Marsha Siha, Incorporator

**CERTIFIED RESOLUTION**

      I, Gonzalo Nicolas Diaz, Secretary of Journey Investments, Inc, a corporation organized and existing under the laws of the State of California, Journey Investments, Inc do hereby certify that the following is a true and correct copy of a resolution duly adopted at a meeting of the Board of Directors of the Company duly held and convened on July 11th, 2015 at which meeting a duly constituted quorum of the Board of Directors was present and acting throughout, and that such resolution has not been modified, rescinded or revoked, and is at present in full force and effect:

      **RESOLVED:**    That Gonzalo Nicolas Diaz, the President of Journey Investments, Inc, is empowered and authorized to execute and deliver in the name of and on behalf of the Company with full force and complete authority to perform any necessary act to buy & Sell Real Estate.

      **IN WITNESS HEREOF,** the undersigned has affixes his/her signature this  _11th_  day of  _July_ , 20_15_ . The Company has no corporate seal.

(Corporate Seal)
(L.S.)

                Gonzalo Nicolas Diaz, Secretary

---

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document |
| --- |

State of  _California_  :

County of  _Orange_  :

Personally appeared before me this _11th_ day of _July_ , 20_15_ , Gonzalo Nicolas Diaz, Secretary of Journey Investments, Inc., and made oath that the above is a true copy from the records of Journey Investments, Inc the corporation.

                                Notary Public

My commission expires on:  _August 13, 2016_ 



ESTEVAN VALDEZ
COMM # 1947941
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires Aug. 13, 2015

# EXHIBIT B

CALIFORNIA
ASSOCIATION
OF REALTORS®

**RESIDENTIAL LISTING AGREEMENT**
(Exclusive Authorization and Right to Sell)
(C.A.R. Form RLA, Revised 6/17)

Date Prepared: _05/03/2018_

**1. EXCLUSIVE RIGHT TO SELL:** _____ _Monge Property Investments Inc_ _____ ("Seller")
hereby employs and grants _____ _REMAX 6000 REALTY_ _____ ("Broker")
beginning (date) ___May 3, 2018___ and ending at 11:59 P.M. on (date) ___November 3, 2018___ ("Listing Period")
the exclusive and irrevocable right to sell or exchange the real property described as _5908 1/2 FAYETTE ST._
_____, situated in _____ _LOS ANGELES_ _____ (City).
___LOS ANGELES___ (County), California, ___90042___ (Zip Code), Assessor's Parcel No. _5484-008-029_ ("Property").
☐ This Property is a manufactured (mobile) home. See addendum for additional terms.
☐ This Property is being sold as part of a probate, conservatorship or guardianship. See addendum for additional terms.

**2. LISTING PRICE AND TERMS:**
A. The listing price shall be: _Three Hundred Five Thousand, Nine Hundred Six_
_____ Dollars ($ _305,906.00_ ).
B. Listing Terms: _____

**3. COMPENSATION TO BROKER:** _____.
Notice: The amount or rate of real estate commissions is not fixed by law. They are set by each Broker individually and may be negotiable between Seller and Broker (real estate commissions include all compensation and fees to Broker).
A. Seller agrees to pay to Broker as compensation for services irrespective of agency relationship(s), either ☒ _4.500_ percent of the listing price (or if a purchase agreement is entered into, of the purchase price), or ☐ $ _____
AND _____, as follows:
    (1) If during the Listing Period, or any extension, Broker, cooperating broker, Seller or any other person procures a ready, willing, and able buyer(s) whose offer to purchase the Property on any price or terms is accepted by Seller, provided the Buyer completes the transaction or is prevented from doing so by Seller. (Broker is entitled to compensation whether any escrow resulting from such offer closes during or after the expiration of the Listing Period, or any extension.)
OR (2) If within _____ calendar days (a) after the end of the Listing Period or any extension; or (b) after any cancellation of this Agreement, unless otherwise agreed, Seller enters into a contract to sell, convey, lease or otherwise transfer the Property to anyone ("Prospective Buyer") or that person's related entity: (i) who physically entered and was shown the Property during the Listing Period or any extension by Broker or a cooperating broker; or (ii) for whom Broker or any cooperating broker submitted to Seller a signed, written offer to acquire, lease, exchange or obtain an option on the Property. Seller, however, shall have no obligation to Broker under paragraph 3A(2) unless, not later than the end of the Listing Period or any extension or cancellation, Broker has given Seller a written notice of the names of such Prospective Buyers.
OR (3) If, without Broker's prior written consent, the Property is withdrawn from sale, conveyed, leased, rented, otherwise transferred, or made unmarketable by a voluntary act of Seller during the Listing Period, or any extension.
B. If completion of the sale is prevented by a party to the transaction other than Seller, then compensation which otherwise would have been earned under paragraph 3A shall be payable only if and when Seller collects damages by suit, arbitration, settlement or otherwise, and then in an amount equal to the lesser of one-half of the damages recovered or the above compensation, after first deducting title and escrow expenses and the expenses of collection, if any.
C. In addition, Seller agrees to pay Broker: _____
D. Seller has been advised of Broker's policy regarding cooperation with, and the amount of compensation offered to, other brokers.
    (1) Broker is authorized to cooperate with and compensate brokers participating through the multiple listing service(s) ("MLS") by offering to MLS brokers out of Broker's compensation specified in 3A, either ☐ _____ percent of the purchase price, or ☐ $ _____.
    (2) Broker is authorized to cooperate with and compensate brokers operating outside the MLS as per Broker's policy.
E. Seller hereby irrevocably assigns to Broker the above compensation from Seller's funds and proceeds in escrow. Broker may submit this Agreement, as instructions to compensate Broker pursuant to paragraph 3A, to any escrow regarding the Property involving Seller and a buyer, Prospective Buyer or other transferee.
F. (1) Seller represents that Seller has not previously entered into a listing agreement with another broker regarding the Property, unless specified as follows: _____
    (2) Seller warrants that Seller has no obligation to pay compensation to any other broker regarding the Property unless the Property is transferred to any of the following individuals or entities: _____
    (3) If the Property is sold to anyone listed above during the time Seller is obligated to compensate another broker: (i) Broker is not entitled to compensation under this Agreement; and (ii) Broker is not obligated to represent Seller in such transaction.

© 2017, California Association of REALTORS®, Inc.
**RLA REVISED 6/17 (PAGE 1 OF 5)**

Seller's Initials (  ) ( _____ )



**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 1 OF 5)**

Property Address: _5908 1/2 FAYETTE ST., LOS ANGELES, CA  90042_ _____  Date: _05/03/2018_

**4.  A.  ITEMS EXCLUDED AND INCLUDED:** Unless otherwise specified in a real estate purchase agreement, all fixtures and fittings that are attached to the Property are included, and personal property items are excluded, from the purchase price.
ADDITIONAL ITEMS EXCLUDED: _____
ADDITIONAL ITEMS INCLUDED: _____.
Seller intends that the above items be excluded or included in offering the Property for sale, but understands that: (i) the purchase agreement supersedes any intention expressed above and will ultimately determine which items are excluded and included in the sale; and (ii) Broker is not responsible for and does not guarantee that the above exclusions and/or inclusions will be in the purchase agreement.

**B. (1) Leased Or Not Owned Items:** The following items are leased or not owned by Seller:
☐ Solar power system    ☐ Alarm system    ☐ Propane tank    ☐ Water Softener
☐ Other _____

**(2) Liened Items:** The following items have been financed and a lien has been placed on the Property to secure payment:
☐ Solar power system    ☐ Windows or doors    ☐ Heating/Ventilation/Air conditioning system
☐ Other _____
Seller will provide to Buyer, as part of the sales agreement, copies of lease documents, or other documents obligating Seller to pay for any such leased or liened item.

**5.  MULTIPLE LISTING SERVICE:**
**A.** Broker is a participant/subscriber to _____ Multiple Listing Service (MLS) and possibly others. Unless otherwise instructed in writing the Property will be listed with the MLS(s) specified above. That MLS is (or if checked ☐ is not) the primary MLS for the geographic area of the Property. All terms of the transaction, including sales price and financing, if applicable, (i) will be provided to the MLS in which the property is listed for publication, dissemination and use by persons and entities on terms approved by the MLS and (ii) may be provided to the MLS even if the Property was not listed with the MLS.

---

### BENEFITS OF USING THE MLS; IMPACT OF OPTING OUT OF THE MLS; PRESENTING ALL OFFERS

**WHAT IS AN MLS?** The MLS is a database of properties for sale that is available and disseminated to and accessible by all other real estate agents who are participants or subscribers to the MLS. Property information submitted to the MLS describes the price, terms and conditions under which the Seller's property is offered for sale (including but not limited to the listing broker's offer of compensation to other brokers). It is likely that a significant number of real estate practitioners in any given area are participants or subscribers to the MLS. The MLS may also be part of a reciprocal agreement to which other multiple listing services belong. Real estate agents belonging to other multiple listing services that have reciprocal agreements with the MLS also have access to the information submitted to the MLS. The MLS may further transmit listing information to Internet sites that post property listings online.

**EXPOSURE TO BUYERS THROUGH MLS:** Listing property with an MLS exposes a seller's property to all real estate agents and brokers (and their potential buyer clients) who are participants or subscribers to the MLS or a reciprocating MLS.

**CLOSED/PRIVATE LISTING CLUBS OR GROUPS:** Closed or private listing clubs or groups are not the same as the MLS. The MLS referred to above is accessible to all eligible real estate licensees and provides broad exposure for a listed property. Private or closed listing clubs or groups of licensees may have been formed outside the MLS. Private or closed listing clubs or groups are accessible to a more limited number of licensees and generally offer less exposure for listed property. Whether listing property through a closed, private network - and excluding it from the MLS - is advantageous or disadvantageous to a seller, and why, should be discussed with the agent taking the Seller's listing.

**NOT LISTING PROPERTY IN A LOCAL MLS:** If the Property is listed in an MLS which does not cover the geographic area where the Property is located then real estate agents and brokers working that territory, and Buyers they represent looking for property in the neighborhood, may not be aware the Property is for sale.

**OPTING OUT OF MLS:** If Seller elects to exclude the Property from the MLS, Seller understands and acknowledges that: (a) real estate agents and brokers from other real estate offices, and their buyer clients, who have access to that MLS may not be aware that Seller's Property is offered for sale; (b) information about Seller's Property will not be transmitted from the MLS to various real estate Internet sites that are used by the public to search for property listings; (c) real estate agents, brokers and members of the public may be unaware of the terms and conditions under which Seller is marketing the Property.

**REDUCTION IN EXPOSURE:** Any reduction in exposure of the Property may lower the number of offers and negatively impact the sales price.

**PRESENTING ALL OFFERS:** Seller understands that Broker must present all offers received for Seller's Property unless Seller gives Broker written instructions to the contrary.

Seller's Initials ( ✗ )( _____ )          Broker's/Agent's Initials ( W )( _____ )

Seller's Initials ( ✗ )    ( _____ )

---

**RLA REVISED 6/17 (PAGE 2 OF 5)**

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 2 OF 5)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com          LISTING

Property Address: <u>5908 1/2 FAYETTE ST., LOS ANGELES, CA 90042</u>                    Date: <u>05/03/2018</u>

**B.** MLS rules generally provide that residential real property and vacant lot listings be submitted to the MLS within 2 days or some other period of time after all necessary signatures have been obtained on the listing agreement. Broker will not have to submit this listing to the MLS if, within that time, Broker submits to the MLS an appropriate form signed by Seller.
☐ Seller elects to exclude the Property from the MLS as provided by C.A.R. Form SELM or the local equivalent form.

**C.** MLS rules allow MLS data to be made available by the MLS to additional Internet sites unless Broker gives the MLS instructions to the contrary. Seller acknowledges that for any of the below opt-out instructions to be effective, Seller must make them on a separate instruction to Broker signed by Seller. Specific information that can be excluded from the Internet as permitted by (or in accordance with) the MLS is as follows:

(1) **Property Availability On The MLS; Address On the MLS:** Seller can instruct Broker to have the MLS not display the Property or the Property address on the Internet. Seller understands that either of these opt-outs would mean consumers searching for listings on the Internet may not see the Property or Property's address in response to their search.

(2) **Feature Opt-Outs:** Seller can instruct Broker to advise the MLS that Seller does not want visitors to MLS Participant or Subscriber Websites or Electronic Displays that display the Property listing to have the features below. Seller understands (i) that these opt-outs apply only to Websites or Electronic Displays of MLS Participants and Subscribers who are real estate brokers and agent members of the MLS; (ii) that other Internet sites may or may not have the features set forth herein; and (iii) that neither Broker nor the MLS may have the ability to control or block such features on other Internet sites.

(a) **Comments And Reviews:** The ability to write comments or reviews about the Property on those sites; or the ability to link to another site containing such comments or reviews if the link is in immediate conjunction with the Property display.

(b) **Automated Estimate Of Value:** The ability to create an automated estimate of value or to link to another site containing such an estimate of value if the link is in immediate conjunction with the Property display. ☐ Seller elects to opt out of certain Internet features as provided by C.A.R. Form SELI or the local equivalent form.

**6.** **SELLER REPRESENTATIONS:** Seller represents that, unless otherwise specified in writing, Seller is unaware of: (i) any Notice of Default recorded against the Property; (ii) any delinquent amounts due under any loan secured by, or other obligation affecting, the Property; (iii) any bankruptcy, insolvency or similar proceeding affecting the Property; (iv) any litigation, arbitration, administrative action, government investigation or other pending or threatened action that affects or may affect the Property or Seller's ability to transfer it; and (v) any current, pending or proposed special assessments affecting the Property. Seller shall promptly notify Broker in writing if Seller becomes aware of any of these items during the Listing Period or any extension thereof.

**7.** **BROKER'S AND SELLER'S DUTIES:**

**A.** Broker agrees to exercise reasonable effort and due diligence to achieve the purposes of this Agreement. Unless Seller gives Broker written instructions to the contrary, Broker is authorized, but not required, to (i) order reports and disclosures including those specified in 7C as necessary, (ii) advertise and market the Property by any method and in any medium selected by Broker, including MLS and the Internet, and, to the extent permitted by these media, control the dissemination of the information submitted to any medium; and (iii) disclose to any real estate licensee making an inquiry the receipt of any offers on the Property and the offering price of such offers.

**B.** Seller agrees to consider offers presented by Broker, and to act in good faith to accomplish the sale of the Property by, among other things, making the Property available for showing at reasonable times and, subject to paragraph 3F, referring to Broker all inquiries of any party interested in the Property. Seller is responsible for determining at what price to list and sell the Property.

**C.** Investigations and Reports: Seller agrees, within 5 (or ____) Days of the beginning date of this Agreement, to pay for the following pre-sale reports: ☐ Structural Pest Control ☐ General Property Inspection ☐ Homeowners Association Documents ☐ Other _____.

**D.** Seller further agrees to indemnify, defend and hold Broker harmless from all claims, disputes, litigation, judgments attorney fees and costs arising from any incorrect or incomplete information supplied by Seller, or from any material facts that Seller knows but fails to disclose including dangerous or hidden conditions on the Property..

**8.** **DEPOSIT:** Broker is authorized to accept and hold on Seller's behalf any deposits to be applied toward the purchase price.

**9.** **AGENCY RELATIONSHIPS:**

**A.** **Disclosure:** The Seller acknowledges receipt of a ☒ "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).

**B.** **Seller Representation:** Broker shall represent Seller in any resulting transaction, except as specified in paragraph 3F.

**C.** **Possible Dual Agency With Buyer:** Depending upon the circumstances, it may be necessary or appropriate for Broker to act as an agent for both Seller and buyer, exchange party, or one or more additional parties ("Buyer"). Broker shall, as soon as practicable, disclose to Seller any election to act as a dual agent representing both Seller and Buyer. If a Buyer is procured directly by Broker or an associate-licensee in Broker's firm, Seller hereby consents to Broker acting as a dual agent for Seller and Buyer. In the event of an exchange, Seller hereby consents to Broker collecting compensation from additional parties for services rendered, provided there is disclosure to all parties of such agency and compensation. Seller understands and agrees that: (i) Broker, without the prior written consent of Seller, will not disclose to Buyer that Seller is willing to sell the Property at a price less than the listing price; (ii) Broker, without the prior written consent of Buyer, will not disclose to Seller that Buyer is willing to pay a price greater than the offered price; and (iii) except for (i) and (ii) above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

**D.** **Confirmation:** Broker shall confirm the agency relationship described above, or as modified, in writing, prior to or concurrent with Seller's execution of a purchase agreement.

RLA REVISED 6/17 (PAGE 3 OF 5)                    Seller's Initials ( _____ ) ( _____ )

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 3 OF 5)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com                    LISTING

Property Address: <u>5908 1/2 FAYETTE ST., LOS ANGELES, CA 90042</u>                                    Date: <u>05/03/2018</u>

   **E. Potentially Competing Sellers and Buyers:** Seller understands that Broker may have or obtain listings on other properties, and that potential buyers may consider, make offers on, or purchase through Broker, property the same as or similar to Seller's Property. Seller consents to Broker's representation of sellers and buyers of other properties before, during and after the end of this Agreement. Seller acknowledges receipt of a ☒ "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

**10. SECURITY, INSURANCE, SHOWINGS, AUDIO AND VIDEO:** Broker is not responsible for loss of or damage to personal or real property, or person, whether attributable to use of a keysafe/lockbox, a showing of the Property, or otherwise. Third parties, including, but not limited to, appraisers, inspectors, brokers and prospective buyers, may have access to, and take videos and photographs of, the interior of the Property. Seller agrees: (i) to take reasonable precautions to safeguard and protect valuables that might be accessible during showings of the Property; and (ii) to obtain insurance to protect against these risks. Broker does not maintain insurance to protect Seller. Persons visiting the Property may not be aware that they could be recorded by audio or visual devices installed by Seller (such as "nanny cams" and hidden security cameras). Seller is advised to post notice disclosing the existence of security devices.

**11. PHOTOGRAPHS AND INTERNET ADVERTISING:**
   **A.** In order to effectively market the Property for sale it is often necessary to provide photographs, virtual tours and other media to buyers. Seller agrees (or ☐ if checked, does not agree) that Broker may photograph or otherwise electronically capture images of the exterior and interior of the Property ("Images") for static and/or virtual tours of the Property by buyers and others for use on Broker's website, the MLS, and other marketing materials and sites. Seller acknowledges that once Images are placed on the Internet neither Broker nor Seller has control over who can view such Images and what use viewers may make of the Images, or how long such Images may remain available on the Internet. Seller further assigns any rights in all Images to the Broker and agrees that such Images are the property of Broker and that Broker may use such Images for advertising, including post sale and for Broker's business in the future.

   **B.** Seller acknowledges that prospective buyers and/or other persons coming onto the property may take photographs, videos or other images of the property. Seller understands that Broker does not have the ability to control or block the taking and use of Images by any such persons. (If checked ) ☐ Seller instructs Broker to publish in the MLS that taking of Images is limited to those persons preparing Appraisal or Inspection reports. Seller acknowledges that unauthorized persons may take Images who do not have access to or have not read any limiting instruction in the MLS or who take Images regardless of any limiting instruction in the MLS. Once Images are taken and/or put into electronic display on the Internet or otherwise, neither Broker nor Seller has control over who views such Images nor what use viewers may make of the Images.

**12. KEYSAFE/LOCKBOX:** A keysafe/lockbox is designed to hold a key to the Property to permit access to the Property by Broker, cooperating brokers, MLS participants, their authorized licensees and representatives, authorized inspectors, and accompanied prospective buyers. Broker, cooperating brokers, MLS and Associations/Boards of REALTORS® are not insurers against injury, theft, loss, vandalism or damage attributed to the use of a keysafe/lockbox. Seller does (or if checked ☐ does not) authorize Broker to install a keysafe/lockbox. If Seller does not occupy the Property, Seller shall be responsible for obtaining occupant(s)' written permission for use of a keysafe/lockbox (C.A.R. Form KLA).

**13. SIGN:** Seller does (or if checked ☐ does not) authorize Broker to install a FOR SALE/SOLD sign on the Property.

**14. EQUAL HOUSING OPPORTUNITY:** The Property is offered in compliance with federal, state and local anti-discrimination laws.

**15. ATTORNEY FEES:** In any action, proceeding or arbitration between Seller and Broker to enforce the compensation provisions of this Agreement, the prevailing Seller or Broker shall be entitled to reasonable attorney fees and costs from the non-prevailing Seller or Broker, except as provided in paragraph 19A.

**16. ADDITIONAL TERMS:** ☐ REO Advisory Listing (C.A.R. Form REOL) ☐ Short Sale Information and Advisory (C.A.R. Form SSIA) ☐ Trust Advisory (C.A.R. Form TA)

_____
_____
_____
_____
_____
_____

**17. MANAGEMENT APPROVAL:** If an associate-licensee in Broker's office (salesperson or broker-associate) enters into this Agreement on Broker's behalf, and Broker or Manager does not approve of its terms, Broker or Manager has the right to cancel this Agreement, in writing, within 5 Days After its execution.

**18. SUCCESSORS AND ASSIGNS:** This Agreement shall be binding upon Seller and Seller's successors and assigns.

**19. DISPUTE RESOLUTION:**
   **A. MEDIATION:** Seller and Broker agree to mediate any dispute or claim arising between them regarding the obligation to pay compensation under this Agreement, before resorting to arbitration or court action. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. **Exclusions from this mediation agreement are specified in paragraph 19B.**

**RLA REVISED 6/17 (PAGE 4 OF 5)**          Seller's Initials (_____) (_____)

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 4 OF 5)**

Property Address: _5908 1/2 FAYETTE ST., LOS ANGELES, CA  90042_ _____ Date: _05/03/2018_

   B. **ADDITIONAL MEDIATION TERMS:** The following matters shall be excluded from mediation: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver or violation of the mediation provisions.

   C. **ADVISORY:** If Seller and Broker desire to resolve disputes arising between them through arbitration rather than court, they can document their agreement by attaching and signing an Arbitration Agreement (C.A.R. Form ARB).

**20. ENTIRE AGREEMENT:** All prior discussions, negotiations and agreements between the parties concerning the subject matter of this Agreement are superseded by this Agreement, which constitutes the entire contract and a complete and exclusive expression of their agreement, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. This Agreement and any supplement, addendum or modification, including any photocopy or facsimile, may be executed in counterparts.

**21. OWNERSHIP, TITLE AND AUTHORITY:** Seller warrants that: (i) Seller is the owner of the Property; (ii) no other persons or entities have title to the Property; and (iii) Seller has the authority to both execute this Agreement and sell the Property. Exceptions to ownership, title and authority are as follows: _____
_____

☐ **REPRESENTATIVE CAPACITY.** This Listing Agreement is being signed for Seller by an individual acting in a Representative Capacity as specified in the attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-S). Wherever the signature or initials of the representative identified in the RCSD appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. Seller (i) represents that the entity for which the individual is signing  already exists and (ii) shall Deliver to Broker, within 3 Days After Execution of this Agreement, evidence of authority to act (such as but not limited to: applicable trust document, or portion thereof, letters testamentary, court order, power of attorney, resolution, or formation documents of the business entity).

**By signing below, Seller acknowledges that Seller has read, understands, received a copy of and agrees to the terms of this Agreement.**

Seller _____   Date _05/03/2018_
   _Monge Property Investments Inc_
Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ E-mail _____

Seller _____   Date _____
Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ E-mail _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA)

Real Estate Broker (Firm) _REMAX 6000 REALTY_ _____ CalBRE Lic. # _01907388_
Address _159 E. LIVE OAK AVE #106_ _____ City _ARCADIA_ ____ State _CA_ Zip _91006_

By _____ Tel. _(323)997-0786_ E-mail _VUTLY@YAHOO.COM_ CalBRE Lic.#_01860736_ Date _05/03/2018_
   _VU LY_
By _____ Tel._____ E-mail _____ CalBRE Lic.#_____ Date _____

☐ Two Brokers with different companies are co-listing the Property. Co-listing Broker information is on the attached Additional Broker Acknowledgement (C.A.R. Form ABA).

© 1991-2017, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

RLA REVISED 6/17 (PAGE 5 OF 5)

**RESIDENTIAL LISTING AGREEMENT -EXCLUSIVE (RLA PAGE 5 OF 5)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

LISTING

CALIFORNIA
ASSOCIATION
OF REALTORS®

**SELLER'S ADVISORY**
(C.A.R. Form SA, Revised 12/15)

Property Address: _5908 1/2 FAYETTE ST., LOS ANGELES, CA  90042_                                ("Property")

1. **INTRODUCTION:** Selling property in California is a process that involves many steps. From start to finish, it could take anywhere from a few weeks to many months, depending upon the condition of your Property, local market conditions and other factors. You have already taken an important first step by listing your Property for sale with a licensed real estate broker. Your broker will help guide you through the process and may refer you to other professionals, as needed. This advisory addresses many things you may need to think about and do as you market your Property. Some of these things are requirements imposed upon you, either by law or by the listing or sale contract. Others are simply practical matters that may arise during the process. Please read this document carefully and, if you have any questions, ask your broker or appropriate legal or tax advisor for help.

2. **DISCLOSURES:**
   A. **General Disclosure Duties:** You must affirmatively disclose to the buyer, in writing, any and all known facts that materially affect the value or desirability of your Property. You must disclose these facts whether or not asked about such matters by the buyer, any broker, or anyone else. This duty to disclose applies even if the buyer agrees to purchase your Property in its present condition without requiring you to make any repairs. If you do not know what or how to disclose, you should consult a real estate attorney in California of your choosing. Broker cannot advise you on the legal sufficiency of any disclosures you make. If the Property you are selling is a residence with one to four units except for certain subdivisions, your broker also has a duty to conduct a reasonably competent and diligent visual inspection of the accessible areas and to disclose to a buyer all adverse material facts that the inspection reveals. If your broker discovers something that could indicate a problem, your broker must advise the buyer.
   B. **Statutory Duties:** (For one-to-four Residential Units:)
      (1) You must timely prepare and deliver to the buyer, among other things, a Real Estate Transfer Disclosure Statement ("TDS"), and a Natural Hazard Disclosure Statement ("NHD"). You have a legal obligation to honestly and completely fill out the TDS form in its entirety. (Many local entities or organizations have their own supplement to the TDS that you may also be asked to complete.) The NHD is a statement indicating whether your Property is in certain designated flood, fire or earthquake/seismic hazard zones. Third-party professional companies can help you with this task.
      (2) Depending upon the age and type of construction of your Property, you may also be required to provide and, in certain cases you can receive limited legal protection by providing, the buyer with booklets entitled "The Homeowner's Guide to Earthquake Safety," "The Commercial Property Owner's Guide to Earthquake Safety," "Protect Your Family From Lead In Your Home" and "Environmental Hazards: A Guide For Homeowners and Buyers." Some of these booklets may be packaged together for your convenience. The earthquake guides ask you to answer specific questions about your Property's structure and preparedness for an earthquake. If you are required to supply the booklet about lead, you will also be required to disclose to the buyer any known lead-based paint and lead-based paint hazards on a separate form. The environmental hazards guide informs the buyer of common environmental hazards that may be found in properties.
      (3) If you know that your property is: (i) located within one mile of a former military ordnance location; or (ii) in or affected by a zone or district allowing manufacturing, commercial or airport use, you must disclose this to the buyer. You are also required to make a good faith effort to obtain and deliver to the buyer a disclosure notice from the appropriate local agency(ies) about any special tax levied on your Property pursuant to the Mello-Roos Community Facilities Act, the Improvement Bond Act of 1915, and a notice concerning the contractual assessment provided by section 5898.24 of the Streets And Highways Code (collectively, "Special Tax Disclosures").
      (4) If the TDS, NHD, or lead, military ordnance, commercial zone or Special Tax Disclosures are provided to a buyer after you accept that buyer's offer, the buyer will have 3 days after delivery (or 5 days if mailed) to terminate the offer, which is why it is extremely important to complete these disclosures as soon as possible. There are certain exemptions from these statutory requirements; however, if you have actual knowledge of any of these items, you may still be required to make a disclosure as the items can be considered material facts.
   C. **Death and Other Disclosures:** Many buyers consider death on real property to be a material fact in the purchase of property. In some situations, it is advisable to disclose that a death occurred or the manner of death; however, California Civil Code Section 1710.2 provides that _you have no disclosure duty_ "where the death has occurred more than three years prior to the date the transferee offers to purchase, lease, or rent the real property, or [regardless of the date of occurrence] that an occupant of that property was afflicted with, or died from, Human T-Lymphotropic Virus Type III/Lymphadenopathy-Associated Virus." This law does not "immunize an owner or his or her agent from making an intentional misrepresentation in response to a direct inquiry from a transferee or a prospective transferee of real property, concerning deaths on the real property."
   D. **Condominiums and Other Common Interest Subdivisions:** If the Property is a condominium, townhouse, or other property in a common interest subdivision, you must provide to the buyer copies of the governing documents, the most recent financial statements distributed, and other documents required by law or contract. If you do not have a current version of these documents, you can request them from the management of your homeowner's association. To avoid delays, you are encouraged to obtain these documents as soon as possible, even if you have not yet entered into a purchase agreement to sell your Property.

3. **CONTRACT TERMS AND LEGAL REQUIREMENTS:**
   A. **Contract Terms and Conditions:** A buyer may request, as part of the contract for the sale of your Property, that you pay for repairs to the Property and other items. Your decision on whether or not to comply with a buyer's requests may affect your ability to sell your Property at a specified price.

© 1991-2015, California Association of REALTORS®, Inc.
**SA REVISED 12/15 (PAGE 1 OF 2)**

Seller's Initials ( _____ )( _____ )

**SELLER'S ADVISORY (SA PAGE 1 OF 2)**

EQUAL HOUSING
OPPORTUNITY

Property Address: <u>5908 1/2 FAYETTE ST., LOS ANGELES, CA  90042</u>                                        Date: <u>05/03/2018</u>

    **B. Withholding Taxes:** Under federal and California tax laws, a buyer is required to withhold a portion of the sale price from your sale proceeds for tax purposes unless you sign an affidavit of non-foreign status and California residency, or some other exemption applies and is documented.

    **C. Prohibition Against Discrimination:** Discriminatory conduct in the sale of real property against individuals belonging to legally protected classes is a violation of the law.

    **D. Government Required Repairs, Replacements and Alterations:** Under State law, Property owners with limited exceptions, are required to: (1) install operable smoke alarms and brace water heaters and provide a Buyer with a statement of compliance. Existing operable smoke alarms, that met compliance standards when installed, do no have to be removed even if not up to current legal requirements. Smoke alarms that are added or that replace older versions must comply with current law; and (2) install carbon monoxide detection devices. Some city and county governments may impose additional requirements, including, but not limited to, installing low-flow toilets and showerheads, gas shut-off valves, tempered glass, and barriers around swimming pools and spas. You should consult with the appropriate governmental agencies, inspectors, and other professionals to determine which requirements apply to your Property, the extent to which your Property complies with such requirements, and the costs, if any, of compliance.

    **E. EPA's LEAD-BASED PAINT RENOVATION, REPAIR AND PAINTING RULE:** The new rule requires that contractors and maintenance professionals working in pre-1978 housing, child care facilities, and schools with lead-based paint be certified; that their employees be trained; and that they follow protective work practice standards. The rule applies to renovation, repair, or painting activities affecting more than six square feet of lead-based paint in a room or more than 20 square feet of lead-based paint on the exterior. Enforcement of the rule begins October 1, 2010. See the EPA website at www.epa.gov/lead for more information.

    **F. Legal, Tax and Other Implications:** Selling your Property may have legal, tax, insurance, title or other implications. You should consult an appropriate professional for advice on these matters.

**4. MARKETING CONSIDERATIONS:**

    **A. Pre-Sale Inspections and Considerations:** You should consider doing what you can to prepare your Property for sale, such as correcting any defects or other problems, making cosmetic improvements, and staging. <u>Many people are not aware of defects in or problems with their own Property. One way to make yourself aware is to obtain professional inspections prior to sale. Pre-sale inspections may include a general property inspection; an inspection for wood destroying pest and organisms (Structural Pest Control Report) and an inspection of the septic or well systems, if any, among others.</u> By doing this, you then have an opportunity to make repairs before your Property is sold, which may enhance its marketability. Keep in mind, however, that any problems revealed by such inspection reports or repairs that have been made, whether or not disclosed in a report, should be disclosed to the buyer (see "Disclosures" in paragraph 2 above). This is true even if the buyer gets his/her own inspections covering the same area. Obtaining inspection reports may also assist you during contract negotiations with the buyer. For example, if a Structural Pest Control Report has both a primary and secondary recommendation for clearance, you may want to specify in the purchase agreement those recommendations, if any, for which you are going to pay.

    **B. Post-Sale Protections:** It is often helpful to provide the buyer with, among other things, a home protection/warranty plan for the Property. These plans will generally cover problems, not deemed to be pre-existing, that occur after your sale is completed. In the event something does go wrong after the sale, and it is covered by the plan, the buyer may be able to resolve the concern by contacting the home protection company.

    **C. Safety Precautions:** Advertising and marketing your Property for sale, including, but not limited to, holding open houses, placing a keysafe/lockbox, erecting FOR SALE signs, and disseminating photographs, video tapes, and virtual tours of the premises, may jeopardize your personal safety and that of your Property. You are strongly encouraged to maintain insurance, and to take any and all possible precautions and safeguards to protect yourself, other occupants, visitors, your Property, and your belongings, including cash, jewelry, drugs, firearms and other valuables located on the Property, against injury, theft, loss, vandalism, damage, and other harm.

    **D. Expenses:** You are advised that you, not the Broker, are responsible for the fees and costs, if any, to comply with your duties and obligations to the buyer of your Property.

**5. OTHER ITEMS:** _____

_____

Seller has read and understands this Advisory. By signing below, Seller acknowledges receipt of a copy of this document.

Seller _____

Print Name <u>Monge Property Investments Inc</u>                                        Date <u>05/03/2018</u>

Seller _____ Date _____

Print Name _____

Real Estate Broker <u>REMAX 6000 REALTY</u>                                        CalBRELic.#: <u>01907388</u>

By _____  <u>VU LY</u> CalBRE Lic.# <u>01860736</u>          Date <u>05/03/2018</u>

By _____                     CalBRE Lic.#_____          Date _____

Address <u>159 E. LIVE OAK AVE #106</u>              City <u>ARCADIA</u>          State <u>CA</u>          Zip <u>91006</u>

Telephone <u>(323)997-0786</u>          Fax <u>(626)538-6088</u>          E-mail <u>VUTLY@YAHOO.COM</u>

© 1991-2015, California Association of REALTORS®, Inc. Copyright claimed in Form SA, exclusive of language required by California Civil Code §1710.2. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

SA REVISED 12/15 (PAGE 2 OF 2)

**SELLER'S ADVISORY (SA PAGE 2 OF 2)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com                LISTING



CALIFORNIA
ASSOCIATION
OF REALTORS®

## DISCLOSURE REGARDING
## REAL ESTATE AGENCY RELATIONSHIP
(Listing Firm to Seller)
(As required by the Civil Code)
(C.A.R. Form AD, Revised 12/14)

☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code section 2079.13(k) and (l).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT**

A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:
To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.
To the Buyer and the Seller:
    (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
    (b) A duty of honest and fair dealing and good faith.
    (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT**

A selling agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:
To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.
To the Buyer and the Seller:
    (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
    (b) A duty of honest and fair dealing and good faith.
    (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties.
An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING BOTH SELLER AND BUYER**

A real estate agent, either acting directly or through one or more associate licensees, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.
In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
    (a) A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
    (b) Other duties to the Seller and the Buyer as stated above in their respective sections.
In representing both Seller and Buyer, the agent may not, without the express permission of the respective party, disclose to the other party that the Seller will accept a price less than the listing price or that the Buyer will pay a price greater than the price offered.
The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.
Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. **This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully. I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE BACK (OR A SEPARATE PAGE).**

☐ Buyer ☒ Seller ☐ Landlord ☐ Tenant _____ Date _05/03/2018_
                              Monge Property Investments Inc

☐ Buyer ☐ Seller ☐ Landlord ☐ Tenant _____ Date _____

Agent _____ **REMAX 6000 REALTY** _____ BRE Lic. # _01907388_
              Real Estate Broker (Firm)

By _____ BRE Lic. # _01860736_ _____ Date _05/03/2018_
    (Salesperson or Broker-Associate)    **VU LY**

Agency Disclosure Compliance (Civil Code §2079.14):
• When the listing brokerage company also represents Buyer/Tenant: The Listing Agent shall have one AD form signed by Seller/Landlord and a different AD form signed by Buyer/Tenant.
• When Seller/Landlord and Buyer/Tenant are represented by different brokerage companies: (i) the Listing Agent shall have one AD form signed by Seller/Landlord and (ii) the Buyer's/Tenant's Agent shall have one AD form signed by Buyer/Tenant and either that same or a different AD form presented to Seller/Landlord for signature prior to presentation of the offer. If the same form is used, Seller may sign here:

    **(SELLER/LANDLORD: DO NOT SIGN HERE)**         **(SELLER/LANDLORD: DO NOT SIGN HERE)**
Seller/Landlord _____ Date _____     Seller/Landlord _____ Date _____

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
ALL RIGHTS RESERVED.

Reviewed by _____ Date _____

**AD REVISED 12/14 (PAGE 1 OF 2)**

## DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)

## CIVIL CODE SECTIONS 2079.24 (2079.16 APPEARS ON THE FRONT)

**2079.13** As used in Sections 2079.14 to 2079.24, inclusive, the following terms have the following meanings: (a) "Agent" means a person acting under provisions of Title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. (b) "Associate licensee" means a person who is licensed as a real estate license or salesperson under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code and who is either licensed under a broker or has entered into a written contract with a broker to act as the broker's agent in connection with acts requiring a real estate license and to function under the broker's supervision in the capacity of an associate licensee. The agent in the real property transaction bears responsibility for his or her associate licensees who perform as agents of the agent. When an associate licensee owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the associate licensee functions. (c) "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee. (d) "Commercial real property" means all real property in the state, except single-family residential real property, dwelling units made subject to Chapter 2 (commencing with Section 1940) of Title 5, mobilehomes, as defined in Section 798.3, or recreational vehicles, as defined in Section 799.29. (e) "Dual agent" means an agent acting, either directly or through an associate licensee, as agent for both the seller and the buyer in a real property transaction. (f) "Listing agreement" means a contract between an owner of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer. (g) "Listing agent" means a person who has obtained a listing of real property to act as an agent for compensation. (h) "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the listing agent. (i) "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. (j) "Offer to purchase" means a written contract executed by a buyer acting through a selling agent that becomes the contract for the sale of the real property upon acceptance by the seller. (k) "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property that constitutes or is improved with one to four dwelling units, any commercial real property, any leasehold in these types of property exceeding one year's duration, and mobilehomes, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. (l) "Real property transaction" means a transaction for the sale of real property in which an agent is employed by one or more of the principals to act in that transaction, and includes a listing or an offer to purchase. (m) "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer, and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. (n) "Seller" means the transferor in a real property transaction, and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor. (o) "Selling agent" means a listing agent who acts alone, or an agent who acts in cooperation with a listing agent, and who sells or finds and obtains a buyer for the real property, or an agent who locates property for a buyer or who finds a buyer for a property for which no listing exists and presents an offer to purchase to the seller. (p) "Subagent" means a person to whom an agent delegates agency powers as provided in Article 5 (commencing with Section 2349) of Chapter 1 of Title 9. However, "subagent" does not include an associate licensee who is acting under the supervision of an agent in a real property transaction.

**2079.14** Listing agents and selling agents shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and, except as provided in subdivision (c), shall obtain a signed acknowledgement of receipt from that seller or buyer, except as provided in this section or Section 2079.15, as follows: (a) The listing agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. (b) The selling agent shall provide the disclosure form to the seller as soon as practicable prior to presenting the seller with an offer to purchase, unless the selling agent previously provided the seller with a copy of the disclosure form pursuant to subdivision (a). (c) Where the selling agent does not deal on a face-to-face basis with the seller, the disclosure form prepared by the selling agent may be furnished to the seller (and acknowledgement of receipt obtained for the selling agent from the seller) by the listing agent, or the selling agent may deliver the disclosure form by certified mail addressed to the seller at his or her last known address, in which case no signed acknowledgement of receipt is required. (d) The selling agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase, except that if the offer to purchase is not prepared by the selling agent, the selling agent shall present the disclosure form to the buyer not later than the next business day after the selling agent receives the offer to purchase from the buyer.

**2079.15** In any circumstance in which the seller or buyer refuses to sign an acknowledgement of receipt pursuant to Section 2079.14, the agent, or an associate licensee acting for an agent, shall set forth, sign, and date a written declaration of the facts of the refusal.

**2079.16** Reproduced on Page 1 of this AD form.

**2079.17** (a) As soon as practicable, the selling agent shall disclose to the buyer and seller whether the selling agent is acting in the real property transaction exclusively as the buyer's agent, exclusively as the seller's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the selling agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. (b) As soon as practicable, the listing agent shall disclose to the seller whether the listing agent is acting in the real property transaction exclusively as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the listing agent prior to or coincident with the execution of that contract by the seller. (c) The confirmation required by subdivisions (a) and (b) shall be in the following form.

(DO NOT COMPLETE. SAMPLE ONLY) _____ is the agent of (check one): ☐ the seller exclusively; or ☐ both the buyer and seller.

(Name of Listing Agent)

(DO NOT COMPLETE. SAMPLE ONLY) _____ is the agent of (check one): ☐ the buyer exclusively; or ☐ the seller exclusively; or

(Name of Selling Agent if not the same as the Listing Agent) ☐ both the buyer and seller.

(d) The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14.

**2079.18** No selling agent in a real property transaction may act as an agent for the buyer only, when the selling agent is also acting as the listing agent in the transaction.

**2079.19** The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.

**2079.20** Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.

**2079.21** A dual agent shall not disclose to the buyer that the seller is willing to sell the property at a price less than the listing price, without the express written consent of the seller. A dual agent shall not disclose to the seller that the buyer is willing to pay a price greater than the offering price, without the express written consent of the buyer. This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.

**2079.22** Nothing in this article precludes a listing agent from also being a selling agent, and the combination of these functions in one agent does not, of itself, make that agent a dual agent.

**2079.23** A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.

**2079.24** Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020
AD REVISED 12/14 (PAGE 2 OF 2)

Reviewed by _____ Date _____



**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)**

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com   LISTING

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: **17609 Ventura Blvd., Suite 314, Encino, CA 91316.**

A true and correct copy of the foregoing document entitled **NOTICE OF MOTION AND MOTION FOR ORDER APPROVING SALE OF REAL PROPERTY PURSUANT TO 11 U.S.C. §363 FREE AND CLEAR OF ALL LIENS, CLAIMS AND INTERESTS, AND GRANTING CERTAIN OTHER RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF RUBEN MONGE, JR., VU LY AND GONZALO N. DIAZ IN SUPPORT THEREOF** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **7/18/2018** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- **Bradley S Beherns    ecfcacb@piteduncan.com**
- **Dane W Exnowski    dane.exnowski@mcalla.com, bk.ca@mcalla.com**
- **Todd S Garan    ch11ecf@aldridgepite.com, TSG@ecf.inforuptcy.com;tgaran@aldridgepite.com**
- **Richard Girgado    rgirgado@counsel.lacounty.gov**
- **Barry S Glaser    bglaser@swesq.com, erhee@swesq.com**
- **Paul H Kim    Pkim@counsel.lacounty.gov**
- **Nancy L Lee    bknotice@mccarthyholthus.com, nlee@ecf.courtdrive.com**
- **Wendy A Loo    wendy.loo@lacity.org**
- **Roksana D. Moradi-Brovia    roksana@rhmfirm.com, matt@rhmfirm.com;rosario@rhmfirm.com;janita@rhmfirm.com;jhayes@rhmfirm.com;susie@rhmfirm.com;max@rhmfirm.com;priscilla@rhmfirm.com;pardis@rhmfirm.com;russ@rhmfirm.com;rebeca@rhmfirm.com**
- **David M Reeder    dmr@vrmlaw.com, jle@vrmlaw.com**
- **Matthew D Resnik    matt@rhmfirm.com, simonkr75376@notify.bestcase.com;roksana@rhmfirm.com;rosario@rhmfirm.com;janita@rhmfirm.com;jhayes@rhmfirm.com;susie@rhmfirm.com;max@rhmfirm.com;priscilla@rhmfirm.com;pardis@rhmfirm.com;russ@rhmfirm.com;re**
- **Jason W Short    jshort@piteduncan.com**
- **Jolene Tanner    jolene.tanner@usdoj.gov, USACAC.criminal@usdoj.gov**
- **Bill Taylor    ecfnotices@4stechnologies.com**
- **United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov**
- **Edward T Weber    bknotice@rcolegal.com**
- **Kristi M Wells    bknotice@rcolegal.com, RCO@ecf.inforuptcy.com**
- **Hatty K Yip    hatty.yip@usdoj.gov**

☐ Service information continued on attached page

**II.  SERVED BY U.S. MAIL:** On **7/18/2018** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

**RESNIK HAYES MORADI LLP**

28

**MOTION TO APPPOVE SALE OF REAL PROPERTY**

1

## ***SERVED VIA CERTIFIED MAIL:***

2

**LOS ANGELES COUNTY TREASURER AND TAX COLLECTOR**

3

Entity Address from POC:

4

5   Los Angeles County Treasurer and Tax Collector
PO Box 54110
Los Angeles, CA 90054-0110

6

7

## ***SERVED VIA U.S. MAIL:***

8   Hon. Ernest M. Robles
U.S. Bankruptcy Court
9   255 E. Temple Street, Suite 1560
Los Angeles, CA 90012

10

Monge Property Investments, Inc.
11   1314 Brightwood Street
Monterey Park, CA 91754-6103

12

Debtor's Agent/Broker:
13

Vu Ly, REMAX 6000 Realty
14   Representing: Monge Property Inv.
154 E. Live Oak Ave., #106
15   Arcadia, CA 91006

16   Buyer's Agent/Broker:

17   Vu Ly, REMAX 6000 Realty
Representing: Journey Investments, Inc.
18   154 E. Live Oak Ave., #106
Arcadia, CA 91006

19

Parties who have previously expressed an interest in the property:
20

Eric West
21   Representing: RICKY MARTINEZ
& ASSOCIATES INVESTMENTS, INC.
22   18025 Sky Park Circle #JKL
Irvine, CA 92614

23

Kevin Lo, Keller Williams
24   Representing: Seller's Advantage, LLC
388 E Valley Blvd, Ste 106
25   Alhambra, CA 91801

26   Krich Adary,
Representing: Ann G. Yu
27   Archetype Commercial Realty
6912 San Fernando Road
28   Glendale, CA 91201

**RESNIK HAYES
MORADI LLP**

29

**MOTION TO APPPOVE SALE OF REAL PROPERTY**

1

2

3

4

Carlos Alvarez
Archetype Commercial Realty
1461 E. Chevy Chase Drive
Suite 100
Glendale, California 91206

5

6

Serge Tran
Keller Williams
118 N. Larchmont Blvd
Los Angeles, CA 90004

7

8

9

Alexander Arguedas
Coldwell Banker
1611 S. Garfield Avenue
Alhambra CA 91801

10

ALL REMAINING CREDITORS:

11

12

Franchise Tax Board
Bankruptcy Section MS: A-340
PO Box 2952
Sacramento, CA 95812

13

14

15

Internal Revenue Service
300 N. Los Angeles St.
Stop 5022
Los Angeles, CA 90012-3478

16

17

Internal Revenue Service
Centralized Insolvency Operations
P.O. Box 7346
Philadelphia, PA 19101-7346

18

19

20

United States of America
c/o US Attorney's Office Tax Division
Attn: Jolene Tanner
300 N. Los Angeles St., RM 7211
Los Angeles, CA 90012-3342

21

22

Employment Development Dept.
Bankruptcy Group MIC 92E
Po Box 826880
Sacramento, CA 94280

23

24

25

California Department of Tax and Fee
Administration
Account Information Group MIC:29
P.O. Box 942879
Sacramento, CA 94279

26

27

28

U. S. Securities and Exchange
Commission
Attn: Bankruptcy Counsel
444 South Flower Street, Suite 900

Los Angeles, CA 90071-9591

Attorney General
United States Department of Justice
Ben Franklin Station
P. O. Box 683
Washington, DC 20044

Civil Process Clerk
United States Attorney's Office
Federal Building, Room 7516
300 North Los Angeles Street
Los Angeles, CA 90012

City of Los Angeles
200 N. Main St
City Hall East 9th FL RM 916
Los Angeles, CA 90012-4110

City of Los Angeles
Attn: Dept. of Bldg. & Safety
P.O. Box 514260
Los Angeles, CA 90051-4260

City of Los Angeles
Fire Department
Attn: Billing Department
P.O. Box 60160
Los Angeles, CA 90060-0160

City of Los Angeles
Housing Department
Attn: Billing & Collections Unit
P.O. Box 17280
Los Angeles, CA 90017-0280

RESNIK HAYES
MORADI LLP

MOTION TO APPPOVE SALE OF REAL PROPERTY

LAHD
Attn REAP Accounting
P.O. Box 17460
Los Angeles, CA 90017-0460

L.A.Housing & Community Investment
c/o Wendy A Loo, Deputy City Attorney
Los Angeles City Attorneys Office
200 North Main St., Suite 920
Los Angeles, CA 90012-4128

Allied Waste
Attn: Customer Service
12949 Telegraph Road
Santa Fe Springs, CA 90670-4049

Dept of Water & Power City of LA
Attn Bankruptcy
P.O. Box 51111
Los Angeles, CA 90051-5700

Estate of Ruben Monge, Sr.
c/o Byrne & Associates, P.C.
139 E. Olive Ave., Ste. 100
Monrovia, CA 91016-3407

JP Morgan Chase
Attn: Bankruptcy
OH1-1188
340 S. Cleveland Ave., Bldg 370
Westerville, OH 43081-8917

JP Morgan Chase Bank, N.A.
c/o Malcolm & Cisneros
2112 Business Center Drive
Irvine, CA 92612-7135

JP Morgan Chase
Mail Code: OH4-7126
3415 Vision Drive
Columbus, OH 43219-6009

JP Morgan Chase Bank Natl Association
Chase Records Center
Attn: Correspondence Mail

**_RETURNED MAIL/REMOVED CREDITORS:_**

(New Address Above)
Internal Revenue Serivce
P.O. Box 21126
Philadelphia, PA 19114

(New Address Above)
Payne Financial Forensics
4100 Guardian Street

Mail Code LA4-5555
700 Kansas Lane
Monroe, LA 71203-4774

Jesus Navarro
1909 Darwin Ave.
Los Angeles, CA 90031-3223

Los Angeles DWP
Attn: Customer Service
P.O. Box 3080
Los Angeles, CA 90030

Margaret Roberts CPA
100 E. Huntington Dr., Ste. 101
Alhambra, CA 91801-1022

Payne Financial Forensics
4100 Guardian Street, 250
Simi Valley, CA 93063-6717

T.D. Service Company
4000 W. Metropolitan Dr.
Ste. 400
Orange, CA 92868-3503

Trustee Corps
17100 Gillette Ave.
Irvine, CA 92614-5603

Kneave Riggall
1917 Oxley Street
South Pasadena, CA 91030-3437

Steven P. Byrne
139 E. Olive Ave, Ste. 100
Monrovia, CA 91016-3407

American Home Mortgage Services
P.O. Box 660029
Dallas, TX 75266-0029

Quality Loan Service Corporation
2141 5th Ave.
San Diego, CA 92101-2101

31
**MOTION TO APPPOVE SALE OF REAL PROPERTY**

Simi Valley, CA 93063-6717

**III.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **7/18/2018** I served the following person(s) and/or entity(ies) by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 7/18/2018 | Ja'Nita Fisher | /s/ Ja'Nita Fisher |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

**RESNIK HAYES
MORADI LLP**

32

**MOTION TO APPPOVE SALE OF REAL PROPERTY**